589 P.2d 1041

STATE of New Mexico,
Plaintiff-Appellee,

v.

Eloy Jerry ORONA, Defendant-Appellant.

No. 11799.

Supreme Court of New Mexico.

Jan. 25, 1979.

Pickard & Singleton, Sarah Michael Singleton, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Charlotte Hetherington Roosen, Asst. Atty. Gen., Santa Fe, Ira Robinson, Dist. Atty., Chester A. Bowerman, Asst. Dist. Atty., Albuquerque, for plaintiff-appellee.

OPINION

PAYNE, Justice.

Defendant was convicted of the first-degree felony of criminal sexual penetration of a person under thirteen years of age and of criminal sexual penetration in the third-degree. Defendant appeals both convictions alleging that various errors committed during the course of the proceedings deprived him of his right to a fair trial.

We address three of these contentions: (1) The trial court's order prohibiting defense counsel from interviewing the State's main witnesses; (2) the prosecutor's leading questions to the complaining witness; and (3) the trial judge's communications with the jury outside the presence of defendant and his counsel.

I.

Defendant contends that the trial court committed reversible error in ordering defense counsel not to interview the complaining witness and her older sister. The sisters were the State's main witnesses. Defendant argues that this order prevented investigation and preparation of a defense, and denied him his right to effective assistance of counsel.

Prior to trial, the State filed a motion to revoke defendant's bond on the ground that defendant had been contacting the older sister. Evidence was presented that defendant attempted to persuade the older sister not to testify against him. The trial judge denied the motion to revoke bond and ordered that neither defendant, nor his attorneys, could contact either sister. The court also denied a defense request to depose the sisters. The court did allow copies of the witnesses' grand jury testimony to be made available to defense counsel in order to assist defendant in the preparation of his case.

N.M.R.Crim.P. 27(b), N.M.S.A.1978 provides that a defendant is entitled to a list of the names and addresses of all witnesses which the district attorney intends to call at trial and any statements made by these witnesses. The State contends that having

provided defense counsel with this information, along with the sisters' grand jury testimony and the deposition of the complaining witness, defendant was entitled to nothing more. The State contends that the trial court did not err in ordering defense counsel not to contact either sister. We do not accept this argument.

In *Gregory v. United States,* 125 U.S. App.D.C. 140, 369 F.2d 185 (1966) the prosecutor instructed the government's witnesses not to discuss the case with defense counsel outside of his presence. In construing a federal statute which required the submission of a list of the names and addresses of the government's prospective witnesses, the court stated that the purpose of such discovery was to assist defense counsel in the preparation of a defense by providing the opportunity to interview the government's witnesses. The court stated:

> Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them. Here the defendant was denied that opportunity which . . . elemental fairness and due process required that he have . . . .
>
> . . . [T]here seems to be no reason why defense counsel should not have an equal opportunity to determine, through interviews with the witnesses, what they know about the case and what they will testify to. In fact, Canon 39 of the Canons of Professional Ethics makes explicit the propriety of such conduct: "A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of opposing counsel or party." Canon 10 of the Code of Trial Conduct of the American College of Trial Lawyers is an almost verbatim provision.

*Id.* 125 U.S.App.D.C. at 143, 369 F.2d 188 at 188. *See also United States v. Vole,* 435 F.2d 774 (7th Cir. 1970).

The State contends that *Gregory* is inapposite authority because in this case the judge on his own ordered defense counsel to refrain from contacting the sisters, whereas in *Gregory* the prosecutor prevented interviews of government witnesses. We see no basis for such a distinction. Regardless of who prevents the interviews, the effect may be to deprive defendant of his right to prepare a defense.

■ The State argues that defendant has failed to show that he was prejudiced by this particular order. No more prejudice need be shown than that the trial court's order may have made a potential avenue of defense unavailable to the defendant. As the court said in *Gregory*:

> It is not suggested here that there was any direct suppression of evidence. But there was unquestionably a suppression of the means by which the defense could obtain evidence. The defense could not know what the eye witnesses to the events in suit were to testify to or how firm they were in their testimony unless defense counsel was provided a fair opportunity for interview.

125 U.S.App.D.C. at 144. 369 F.2d at 189.

Furthermore, the United States Supreme Court has pointed out:

> [It is not] realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate. (Footnote omitted.)

*Dennis v. United States,* 384 U.S. 855, 874–75, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966).

■ We do not hold that the defendant has an absolute and unlimited right of access to the State's prospective witnesses. This is not a case in which there are compelling justifications for totally limiting defendant's access to the witnesses against him. Although there may have been good reason to limit access by the defendant himself, there does not appear to have been any justification for the court's absolute prohi-

bition against any contact by defense counsel. Although defendant had been in contact with one of the sisters, we cannot impute his motives, whatever they may have been, to his attorneys. Furthermore, as the court stated in *Gregory*:

> Tampering with witnesses and subornation of perjury are real dangers . . . . But there are ways to avert this danger without denying defense counsel access to eye witnesses to the events in suit . . . . Defense counsel are officers of the court. And defense counsel are not exempted from prosecution under the statutes denouncing the crimes of obstruction of justice and subornation of perjury.

125 U.S.App.D.C. at 143, 369 F.2d at 188.

■ The State contends that defendant's conduct in contacting the older sister amounted to a waiver of any right he had to further contact with either girl. Although in some cases such conduct might conceivably rise to the level of a waiver, defendant's conduct in this case, which the trial court did not consider sufficient to justify a revocation of bond, did not constitute a waiver of his right to prepare a defense.

■ We are aware of the sensitive nature of this case, and of the problems that might arise in light of the ages of the witnesses, their past relationship to defendant, and the nature of the alleged crimes. None of these facts, however, justify an outright prohibition against all contact with the witnesses. The trial court could fashion some means to ensure that the witnesses will be protected from intimidation without unduly impairing defendant's right to prepare a defense. However, in the absence of some demonstrable good cause, a trial court may not impose an absolute restriction on defense counsel's access to the State's prospective witnesses.

## II.

The second issue we address on this appeal is defendant's contention that he was deprived of a fair trial by the use of leading questions put to the young complaining witness by the prosecuting attorney. The particular testimony which defendant contends deprived him of a fair trial concerns the offense of criminal sexual penetration in the first-degree allegedly committed in June 1977.

The complaining witness testified that she and her sister went to defendant's house. Her sister then left, taking defendant's car to visit a friend. When asked to describe what happened thereafter, the witness said:

> Well, I was just listening to the radio or something. Listening to the radio I think, and I [pause] don't think, excuse me, [pause] I'm not sure he tried anything and then I told him to leave me alone.

After a pause, the prosecutor asked a leading question to which defense counsel objected. The court sustained defense counsel's objection to that question and instructed the State not to lead the witness on the crucial elements of the offense.

At this point the prosecutor asked the witness if she remembered giving a written statement to the police. The witness answered affirmatively. Defendant objected to the use of the statement and the prosecutor responded that the witness had already said she did not recall exactly what had occurred. The court then asked the witness if it would help her to read the statement, to which she answered "yes." The witness was then allowed to read the statement. Without the prosecutor inquiring if her memory had been refreshed, the following exchange took place:

> Prosecutor: Now, did you say in your statement to the police as follows: "I was wearing a dress. . . . "
>
> Defense Counsel: I'll object to this Your Honor. It's improper, highly improper. The witness is in person, she can testify. You've permitted her to refresh her recollection.
>
> Judge: Yes, I'll sustain that. I'll ask you to just ask those questions and if she still needs additional refreshing on her recollection then you can use the statement then.

Ignoring the judge's ruling, the prosecutor then asked:

Did you tell the police on July 6 that on one occasion you saw Jerry Orona alone when you were wearing a dress?

Defense counsel again objected on the same grounds and the judge again sustained the objection. After asking if her statement to the police was true, the prosecutor went right back to the leading questions which the court had twice prohibited. The only evidence which would support criminal sexual penetration in the first-degree was then elicited by the following exchange:

Prosecutor: On this occasion were you wearing a dress and did he left up your dress and start pulling down your panties?

Witness: Yes.

Prosecutor: Did he start kissing your vagina and stick his tongue inside your vagina?

Defense Counsel: Objection Your Honor. The district attorney is now testifying. This is. . . . This is shocking. The witness has a right to relate what occurred. She is now being spoon-fed the story.

At this point the trial court permitted the witness to be led, citing N.M.R.Evid. 611(c), N.M.S.A.1978. The direct examination continued with the prosecutor graphically describing sexual acts of defendant by way of leading questions, to each of which the witness gave a simple answer of "yes."

Rule 611(c) provides in part:

Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.

■ Developing testimony by the use of leading questions must be distinguished from substituting the words of the prosecutor for the testimony of the witness. Here, the trial court, in permitting every word describing the alleged offense to come from the prosecuting attorney rather than from the witness, abused its discretion in such a manner as to violate principles of fundamental fairness.

■ The State argues that the complaining witness could not recall the events in June and the trial court permitted her memory to be refreshed by use of the police statement consistent with N.M.R.Evid. 612, N.M.S.A.1978. The trial court was correct in permitting the witness to refresh her recollection, but Rule 612 does not permit the use of leading questions as was done in this case.

■ There are several requirements that must be met before a writing can be used to refresh recollection. The witness's memory on the subject must be exhausted. *State v. Bazan,* 90 N.M. 209, 561 P.2d 482 (Ct.App. 1977), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977); 3 Weinstein's Evidence, ¶ 612[01] (1978). The time, place, and person to whom the statement was given must be established. *Goings v. United States,* 377 F.2d 753 (8th Cir. 1967). If the witness acknowledges the statement, the court may allow the witness to use it to refresh his recollection. "It then becomes proper to have the witness, if it is a fact, to say that his memory is refreshed and, independent of the exhibit, testify what *his present recollection is.* [Citation omitted.]" *Id.* at 760–61.

In this case the threshold requirement of exhausted memory was met. The witness's first description of what occurred in June was uncertain and hesitant. The trial court properly determined that she needed to read the statement. However, after reading the statement, the witness was never asked if her memory was thereby refreshed. Rather, the prosecutor began leading the witness as to the contents of the statement as follows:

Now, did you say in your statement to the police as follows: "I was wearing a dress. . . . "

When an objection to this question was sustained, the prosecutor ignored the court's ruling and went right on with additional leading questions. The witness was never given an opportunity to testify independently of the statement.

■ As the court said in *Goings, supra* : Refreshing a witness's recollection by memorandum or prior testimony is per-

fectly proper trial procedure and control of the same lies largely in the trial court's discretion. However, if a party can offer a previously given statement to substitute for a witness's testimony under the guise of "refreshing recollection," the whole adversary system of trial must be revised. *The evil cf this practice hardly merits discussion. The evil is no less when an attorney can read the statement in the presence of the jury and thereby substitute his spoken word for the written document.* (Citation and footnote omitted.)

*Id.* at 759–60.

 The fact that the witness adopted her prior statement by her simple affirmative answers to the prosecutor's leading questions did not cure the error.

It [the prior statement] is still a hearsay statement suggested to the witness rather than his own statement given under oath in court. The procedure utilized cannot be sanctioned to fill in memory gaps of any witness who is called to testify. (Citation omitted.)

*Id.* at 761–62.

 Leading questions are often permissible when a witness is immature, timid or frightened. 3 Weinstein's Evidence, ¶ 611[05] (1978). Although the age of a witness might justify the use of leading questions under some circumstances, the youth and inexperience of such a witness might also create a much greater danger from the use of suggestive questions than might otherwise be the case.

In this case the witness, without the use of leading questions, described another incident with defendant which occurred in January 1977. Although her answer to the first question about the events in June was hesitant and equivocal, she was never given an opportunity to testify independently after reviewing her statement. The purpose of permitting her to refresh her recollection by the use of that statement was to assure that the witness testify in her own words. *Goings, supra* at 762. Since she was never given that opportunity, we cannot say that she was too timid, frightened or immature to testify on her own.

We hold that there was an abuse of discretion by the trial court in allowing the prosecutor to lead the witness as to each critical element of the offense.

## III.

Defendant's third contention is that the trial judge committed reversible error when he answered two notes from the jury outside the presence of defense counsel and without informing counsel of the receipt of the notes, their contents, or the nature of his answers to those notes.

The first note asked how the case got before the grand jury. The judge's answer was:

All criminal cases start with a grand jury proceeding or a criminal information filed by the District Attorney.

This is simply the way charges are brought against defendants. The triggering mechanism to bring the matter to the attention of the District Attorney can come from any source—and that is immaterial.

It really does not matter how a case gets started—the important thing is that you, the jury, hear and decide the entire case on your own.

The second note simply said: "Four not guilty, eight—guilty—both counts." The court's answer was:

Your verdict must be unanimous. You have not been deliberating all that long, and I request that you continue to see if you can arrive at a unanimous verdict.

After the notes were answered, the court informed counsel of their existence. After the verdict was returned, defense counsel moved for a mistrial because of the court's answers to the notes. The motion was denied.

 Defendant contends that the trial court's communications with the jury outside the presence of defendant and his counsel and without informing them of the communications violated defendant's right to be present at all stages of the proceedings and

his right to assistance of counsel. Although we are not certain whether the court's answers to the notes affected the jury's verdict, we agree that they violated proper trial procedure.

The law in New Mexico is well settled that it is improper for the trial court to have any communication with the jury concerning the subject matter of the court proceedings, except in open court and in the presence of the accused and his counsel. *State v. Beal,* 48 N.M. 84, 146 P.2d 175 (1944); *State v. Brugger,* 84 N.M. 135, 500 P.2d 420 (Ct.App.1972). When such communication takes place, a presumption of prejudice arises which the State has the burden to overcome. *State v. Brugger, supra.* The State made no attempt whatsoever to overcome this presumption. Having failed to rebut the presumption, we must hold that the judge's communications with the jury were prejudicial and entitled defendant to a new trial.

Defendant raises other issues which he argues would require reversal of his convictions. We are not persuaded by defendant's contentions as to those matters.

The convictions are reversed and the cause is remanded to the district court for a new trial.

IT IS SO ORDERED.

SOSA, C. J., and McMANUS, Senior Justice, concur.