599 P.2d 395

STATE of New Mexico, Plaintiff-Appellee,

v.

Gilbert SAAVEDRA, Defendant-Appellant.

No. 3940.

Court of Appeals of New Mexico.

Aug. 7, 1979.

Roderick A. Dorr, Terrazas & Dorr, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy J. Quintana, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

ANDREWS, Judge.

Appellant, Gilbert Saavedra (Saavedra) was charged with two counts of forgery by falsely making a check or in the alternative with forgery by issuing or transferring a forged check, and one count of conspiracy to commit forgery. Sections 30–16–10(A) and (B); 30–38–2, N.M.S.A.1978. Following a jury trial he was found guilty on all counts. Two issues are argued: (1) whether the trial court's answer to the jury's question was an unauthorized communication; and (2) whether the response given to the jury misstated the law and confused the jury.

At the trial the State proved that Lydia Chael lost her checkbook on October 26, 1977. The following day, a woman using a driver's license with Chael's name for identification presented a check on her account at a branch of the Albuquerque National Bank. This check, numbered 121 (Exhibit 1), was cashed. The same day, a woman later identified as Teresa Saavedra, defendant's sister, went to the main office of the Albuquerque National Bank and attempted to cash a second check, numbered 125 (Ex-

hibit 3) on Chael's account, again using a driver's license with Chael's name for identification. An employee of the bank became suspicious of Teresa and called the police. Saavedra had been outside the bank while Teresa was inside attempting to cash the check. When she was arrested, Teresa had other checks, an identification card, a savings account card, savings deposit book and a checkbook, all with Chael's name on them.

Handwriting exemplars from Saavedra and Teresa were obtained. An expert on questioned documents testified that the two checks were probably written by Saavedra. The endorsements were written by Teresa and nothing on them was written by Chael, from whom exemplars were also obtained.

I. Saavedra argues that the district judge committed reversible error when he responded to a written question from the jury by sending a note back to the jury rather than calling the jury into the courtroom to answer the question. The judge, in open court, informed the parties of the note's contents and how he intended to answer. Defense counsel objected to the response on the grounds that the jury had already been instructed on the elements of the crime.

The law in New Mexico is well-settled that it is improper for the trial court to have any communication with the jury concerning the subject matter of the court proceedings, except in open court and in the presence of the accused and his counsel. *State v. Orona*, 92 N.M. 450, 589 P.2d 1041 (1979); *State v. Beal*, 48 N.M. 84, 146 P.2d 175 (1944); *State v. Brugger*, 84 N.M. 135, 500 P.2d 420 (Ct.App.1972). When such a communication takes place a presumption of prejudice arises which the State has the burden to overcome. *State v. Orona, supra.* However, the question here is whether such a presumption arises when the trial court consults with counsel before sending its reply to the jury; the defendant is present; and there is no objection made to the procedure. We answer in the negative.

244

■ As conceded by Saavedra, the trial judge consulted with counsel and advised them of his intended response after receiving the jury's question. There was a "communication" here consisting of the note. *See State v. Orona, supra* ; *State v. Brugger, supra.* The communication occurred in open court, with notice to, and in the presence of the parties. There was no unauthorized communication and therefore, no presumption of prejudice. *Compare, State v. Orona, supra.* The record also shows that although the defendant objected to the response, he did not object to the failure of the court to call the jury to the jury box. Inasmuch as the defendant did not object to this action at the time of trial, an objection at this late date is not proper. *State v. Herrera,* 82 N.M. 432, 483 P.2d 313 (Ct.App. 1971), *cert. denied* 404 U.S. 880, 92 S.Ct. 217, 30 L.Ed.2d 161; *Hines v. State,* 557 P.2d 917 (Okl.Cr.App.1976). In view of the foregoing, the district court did not commit reversible error by following the procedure used here. Accord, *Territory v. Lopez & Casias,* 3 N.M. 156, 2 P. 364 (1884).

II. Saavedra argues that the trial court's response to the jury's question was an incorrect statement of the law and injected intolerable confusion into the instructions.

Instruction No. 4 on Count II (forgery) states:

> For you to find the defendant guilty of forgery as charged in Count II, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. The defendant *made up* check # 121, State's Exhibit 1, *with a false signature* on that check:
> 2. At the time, the defendant intended to injure, deceive or cheat Albuquerque National Bank of [sic] another;
> 3. This happened in New Mexico on or about the 27th day of October, 1977. (Emphasis added.)

The elements instruction on Count I is identical except for the check and exhibit numbers involved.

The question from the jury was:

> To clarify Count II: For the defendant to be found guilty. Does [sic] the signature *and* the payee have to be written by the defendant? (Emphasis in original.)

The judge's answer was, "No, read the instruction."

■ Saavedra's argument is that the elements instruction, as originally submitted to the jury, required a finding that he wrote the face of the two checks *and* the false signature of the drawer before a guilty verdict could be returned, but the supplemental instruction changed the elements so that the jury only had to find Saavedra wrote the face of the check *or* wrote the drawer's signature before they could reach a guilty verdict. Saavedra misreads the instruction. In requiring the jury to find that the defendant "made up" a check, "with a false signature on that check," the instructions did not require the jury to find that Saavedra wrote both the payee's name and the false signature. Rather, the instruction allowed the jury to find that the checks had false signatures, and that, knowing the signatures to be false, Saavedra "made up" the check. Use of the word "with" in the instruction does not mean that items are used in the conjunctive.

Section 30–16–10(A), defines the crime of forgery:

> Forgery consists of falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud.

Under this provision, assuming the requisite knowledge and intent, one commits forgery when he makes up a check, whether he or someone else places a false signature on it. *See State v. Crouch,* 75 N.M. 533, 407 P.2d 671 (1965); *State v. Smith,* 32 N.M. 191, 252 P. 1003 (1927). Therefore, whether Saavedra wrote the false signature or someone else did, the jury had to find that the checks had a false signature and that Saavedra knew the signature was false. In this case, the jury also had to find that Saavedra "made up" the check.

In the foregoing posture, the jury sent its inquiry of whether Saavedra had to write both the payee's name and the false signature. The judge replied "No, read the instruction." This was perfectly proper—the jury could find Saavedra wrote both names in arriving at a guilty verdict, but was not required to do so under the original instructions.

In giving the supplemental instruction, the court merely restated what it had told the jury earlier. The answer given by the trial judge in no way coerced or misinformed the jury. There was no reversible error. *Compare State v. Kendall*, 90 N.M. 236, 561 P.2d 935 (Ct.App.1977); *State v. Cruz*, 86 N.M. 341, 524 P.2d 204 (Ct.App. 1974).

Finding no error, we affirm the judgment and sentence.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.