This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      **NO. 28,866**

**STEVEN H.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John W. Pope, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Steven H. (Child) appeals from an adjudication of delinquency based upon the district court's finding that he committed third-degree criminal sexual contact of a minor (CSCM) under thirteen years of age, contrary to NMSA 1978, Section 30-9-13(C)(1) (2003), and NMSA 1978, Section 32A-2-3(A) & (B) (2005) (amended 2009). Child raises four issues on appeal: (1) Child's due process right was violated by the victim advocate's active involvement in the case; (2) Child's right to prepare a defense was violated when the district court denied Child the opportunity to interview Jane Doe (Victim), ordered late interviews with the State's remaining witnesses, and denied Child's motion for a continuance; (3) there was insufficient evidence for Child's adjudication of delinquency; and (4) Child received ineffective assistance of counsel. We conclude that the district court violated Child's right to prepare a defense by denying Child the opportunity to conduct a pretrial interview with Victim based upon the conduct of Child's counsel. Furthermore, retrial would not implicate double jeopardy concerns because sufficient evidence supports Child's adjudication of delinquency. As a result, we reverse Child's adjudication of delinquency and remand to the district court for a new trial. Because we reverse on these grounds, we do not reach the remaining issues raised by Child on appeal.

**BACKGROUND**

On October 1, 2007, the State filed a petition asserting that Child was a delinquent child based upon his alleged commission of one count of first-degree criminal sexual penetration (CSPM) (child under thirteen years of age) and two counts of second-degree CSCM (child under thirteen years of age). The State subsequently issued a witness list, including Victim, Victim's parents, and several additional witnesses who reside in Arizona.

After the parties' unsuccessful attempt to reach an agreement regarding scheduling interviews of Victim and other witnesses, Child filed a motion to compel witness interviews, requesting that the district court require the State to produce Victim and other Arizona witnesses for interviews at least six weeks prior to trial. At the resulting hearing, the parties agreed that Victim was subject to a pretrial interview, but disagreed regarding when and how the interview would be conducted since Victim was five-years-old and lived out-of-state. Child argued that mistaken identity was a potential issue because Victim knew another boy named Steven, and Victim never referred to Child as "Steven," but only as "the big, tall boy." As a result, Child contended that Victim's interview needed to be scheduled with sufficient time to allow the defense to hire an expert to evaluate Victim's statement. Child further relied on *State v. Orona*, 92 N.M. 450, 589 P.2d 1041 (1979), to argue that not allowing

Child sufficient time before trial to interview Victim and other witnesses would deny Child the right to prepare a defense.

The State recognized that Victim was "the main witness in this case" and argued that it would be "abusive" to require Victim to travel from Arizona to New Mexico for both a pretrial interview and trial in such a short period of time. Additionally, the State argued that since Child already had information from a safe house interview with Victim, an interview the weekend before trial would allow Child sufficient time to prepare a defense. In response, Child argued that the safe house interview was insufficient since it "was probably less than ten minutes [in duration], and it wasn't done in a manner that's conducive to protecting a defendant's rights, especially another juvenile's rights." Child further contended that Child had no opportunity to ask questions regarding the possible mistaken identity in the safe house interview.

The district court ordered that Child be allowed to interview Victim and other witnesses in Phoenix, Arizona. The court reasoned that interviewing Victim in Phoenix would provide a reasonable compromise between Victim's comfort and Child's right to prepare for trial. The court further reasoned that it would be "very

difficult for [Child] to prepare for trial without having any kind of contact with [Victim] before trial." Specifically, the court concluded that

> if [Child is] going to be able to even attempt to put up a mistaken identity defense, he's almost going to have to be able to interview [Victim]. And . . . if he is going to interview [Victim] for a mistaken identity defense, he's going to almost have to able to do that with some time to be able to verify . . . what [Victim] says.

Subsequent to the scheduled interviews in Phoenix, the State filed a notice of ineffective assistance of defense counsel and a motion for protective order. The State alleged and provided evidence that Child's counsel attempted to videotape the witness interviews without either a prior agreement with the State or a court order, and Child's counsel "became enraged, hostile and violent" after the State refused to allow videotaping of the interviews. The State further provided evidence that the first interview with an investigating detective was unsuccessful because after the detective refused to answer questions that he deemed irrelevant, Child's counsel then told the detective to "get out." Due to this conduct, Child's counsel was escorted from the building, and the interviews with Victim and other witnesses were cancelled. The State additionally provided evidence that Child's counsel subsequently had Victim's parents personally served with subpoenas for alternate pretrial interviews despite the State's rejection of interviews on the specified date. The State argued that defense

5

counsel's conduct fell below the standard of care for a reasonably effective attorney, and that the district court should find defense counsel ineffective. In the alternative, the State asked the district court to enter a protective order that would require that all interaction between Child's counsel, Victim, and the State's additional witnesses be supervised by the district court. The State did not ask the court to prohibit Child from interviewing the complaining witness. In response, Child filed a motion to dismiss due to prosecutorial misconduct and violation of Child's right to prepare a defense. Child argued that defense counsel attempted to videotape the interviews at the request of Child's expert witness and that the State allowed the interviews to be cancelled without regard for Child's rights or the court order.

The district court heard the parties' motions at a hearing on March 6, 2008. The court expressed concern that trial was coming up and that Victim had not yet been interviewed. Victim's advocate then stated that she had "very grave concerns" about subjecting Victim to a pretrial interview with Child's counsel based upon his conduct in Phoenix. As a result, Victim's advocate asked the court to exercise its discretion to prevent Child's counsel from interviewing Victim since very young children are protected from confrontation even in a trial setting, and Child's "constitutional rights are not at play." The State subsequently argued that one of its biggest concerns was

whether Child was going to receive effective assistance of counsel that would "defend [Child's] constitutional rights," and further described its attempts to protect those rights by providing pretrial interviews. The State asserted that the interviews did not occur "[s]olely because of what [Child's counsel] did." As a result, the State asked the court to find defense counsel ineffective. In the alternative, the State asked that the witness interviews be supervised by the court, reasoning that its main concern was protecting Victim in light of defense counsel's conduct.

Child responded by correcting several alleged misrepresentations, including explaining that defense counsel asked to videotape the interviews at the request of Child's expert witness. Child further contended that although defense counsel and the State were both assertive toward each other, defense counsel was not unprofessional. Child confirmed that the interviews were ultimately "shut down by the officers because the officers were butting heads with [Child's counsel] so bad that [he] finally did ask the officer to leave." Finally, Child argued that the main question was how Child was going to receive a fair trial under the circumstances since Child was not given an opportunity to interview the witnesses. Child further contended that he needed to conduct the interviews in order to prepare Child's theory of the case and allow experts to prepare to testify regarding Child's theory of the case.

7

The district court ultimately denied the State's motion to find defense counsel ineffective, reasoning that although there were certain ethical issues, the court believed Child's counsel to be "quite capable of going forward with this case." Without providing additional reasoning, the court further stated that it was "not going to order that [Victim] have any pretrial interviews at this point," and that the court would order that the remaining interviews be supervised by the court. In a written order following the hearing, the court found that Child's right to prepare a defense did not include videotaping the witness interviews and that "pretrial interviews should be conducted utilizing protective measures." As a result, the court ordered that pretrial interviews with Victim "will not be allowed" and that a bailiff of the court would supervise the interviews with all other witnesses for the State. At a subsequent hearing, the court clarified that the conduct of Child's counsel was the reason for the protective measures.

At a hearing on March 13, 2008, the district court heard Child's motion to dismiss, or in the alternative, to exclude witness testimony or grant Child a continuance. Child argued that due to the court's order regarding pretrial interviews, his "opportunity to get a fair trial and to prepare his defense [was] irretrievably lost at [that] point." Child further contended and his expert witness testified that a

continuance was needed to allow Child time to prepare for the interview with the State's expert on the following day and also to allow Child's expert time to adequately evaluate the statements before trial. Child argued that he had insufficient time to prepare a defense regarding mistaken identity or evaluate whether testimony would constitute impermissible vouching for the credibility of Victim. The court summarily denied Defendant's motion for dismissal, suppression, or a continuance without any reasoning or findings.

During a bench trial on March 17-18, 2008, Child waived cross-examination of Victim. In Child's closing statement, Child argued that Victim had never referred to Child as "Steven" but as "the boy" or the "big tall boy," but the State in rebuttal contended that no testimony was presented to support Child's argument. The district court adjudged Child delinquent based upon the commission of third-degree CSCM, and Child subsequently appealed. We reverse and remand for a new trial.

**DISCUSSION**

**Right to Prepare a Defense**

Child argues that his right to prepare a defense was violated when the district court denied Child the opportunity to interview Victim, ordered late interviews with the State's remaining witnesses, and denied Child's motion for a continuance.

Specifically, Child contends that since Victim referred to another person named "Steven" and referred to Child only as "that boy," an interview with Victim was crucial in order for Child to prepare a mistaken identity defense.

We review a district court's granting or denial of discovery in a criminal case under an abuse of discretion standard. *State v. Layne*, 2008-NMCA-103, ¶ 6, 144 N.M. 574, 189 P.3d 707. "We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Casillas*, 2009-NMCA-034, ¶ 24, 145 N.M. 783, 205 P.3d 830 (internal quotation marks and citation omitted).

Initially, we note that in the district court below, the parties and Victim's advocate agreed that Victim was subject to a pretrial interview, but disputed when and how the interview would be conducted. As a result, the issue of whether Victim was subject to an interview is not before this Court, and we only review whether the district court abused its discretion by denying Child an opportunity to interview Victim based upon defense counsel's conduct.

Child relies on *Orona* to argue that his right to prepare a defense was violated. 92 N.M. at 452-53, 589 P.2d at 1043-44. In *Orona*, the defendant was charged with CSPM involving a child under thirteen years of age, the state's witness list included

10

both the alleged victim and her older sister, and the alleged victim and her sister were the state's main witnesses. *Id.* at 451-52, 589 P.2d at 1042-43. Prior to trial, the prosecution presented evidence that the defendant had contacted the alleged victim's sister in an attempt to persuade her not to testify against him. *Id.* at 451, 589 P.2d at 1042. As a consequence, the district court entered an order that neither the defendant nor his attorneys could contact or depose the alleged victim or her sister. *Id.* However, the court "allow[ed] copies of the witnesses' grand jury testimony to be made available to defense counsel in order to assist [the] defendant in preparation of his case." *Id.* Our Supreme Court reversed the defendant's convictions, holding that the circumstances did not justify an outright prohibition on access to the alleged victim and her sister and that the order violated the defendant's right to prepare a defense. *Id.* at 452-53, 589 P.2d at 1043-44. Instead, the Court reasoned that the district court could have "fashion[ed] some means to ensure that the witnesses [would] be protected from intimidation without unduly impairing [the] defendant's right to prepare a defense." *Id.*

We conclude that *Orona* controls this case. Similarly to *Orona*, Child was charged with CSPM involving a child under thirteen years of age in which the alleged victim was one of the State's main witnesses. *See id.* at 451-52, 589 P.2d at 1042-43.

Furthermore, where defendant's access to grand jury testimony was not sufficient to protect the defendant's right to prepare for trial in *Orona*, we conclude that Child's access to Victim's safe house interview and other discovery was not sufficient to protect Child's right to prepare a defense in this case. *See id.* at 451, 453, 589 P.2d at 1042, 1044. Specifically, the safe house interview and other discovery did not address any discrepancies in identity and did not give Child the opportunity to question Victim regarding the possible mistake of identity. Finally, just as *Orona* concluded that an absolute restriction on the defendant's access to the alleged victim was not justified by the defendant's improper conduct, we conclude that an absolute restriction on Child's access to Victim was not justified by the conduct of defense counsel. *See id.* at 452-53, 589 P.2d at 1043-44. We echo our Supreme Court's concerns expressed in *Orona*. We are aware of the sensitive nature of this case, the nature of the alleged crimes, and the problems that could have arisen in a pretrial interview due to Victim's age and the conduct of defense counsel. *See id.* at 453, 589 P.2d at 1044. However, we conclude that the district court abused its discretion by denying Child any subsequent opportunity to interview Victim before trial. Instead, the district court could have fashioned some reasonable protective means, short of an absolute restriction, that would have allowed the necessary interview so Child could

prepare an adequate defense, while ensuring that Victim would be protected from improper intimidation by defense counsel. *See id.*

The State argues that *Orona* is distinguishable because the district court did not impose an "absolute restriction" on Child's access to Victim. *See id.* (reasoning that "in the absence of some demonstrable good cause, a [district] court may not impose an absolute restriction on defense counsel's access to the [s]tate's prospective witnesses"). Specifically, the State contends that the court did not deny Child the opportunity to interview Victim because Child's counsel could have interviewed Victim in Phoenix had his conduct not resulted in the cancellation of the interview. The State further argues that since the "sole reason" for the order prohibiting the interview was the conduct of counsel hired by Child, Child in effect chose to not conduct the interview by choosing to continue retaining said counsel. Finally, the State argues that the restriction was only a partial restriction because it only covered the last eleven or fewer days prior to trial.

We conclude that the district court's order was an absolute restriction on Child's access to Victim. The State had failed to make Victim available for interviews prior to the cancellation of the interview in Phoenix. The court's subsequent order clearly states that "pretrial interviews will not be allowed with [Victim]," and the

order does not include any exception permitting interviews to be conducted by alternate counsel or under any other circumstances. Furthermore, although the order only covered the remaining time period immediately before trial, the language and effect of the order imposed an absolute restriction that had the undisputed effect of preventing Child from interviewing Victim before trial.

Finally, we decline to impute the conduct of Child's counsel to Child. *Orona* clarifies that "[r]egardless of who prevents the interviews, the effect may be to deprive [the] defendant of his right to prepare a defense." *Id.* at 452, 589 P.2d at 1043. *Orona* further declined to impute the defendant's motives in contacting the alleged victim and her sister to the defendant's counsel. *Id.* at 453, 589 P.2d at 1044. The defendant's own improper conduct was insufficient to waive his right to interview the alleged victim in *Orona*, and we conclude that the improper conduct of Child's counsel is also insufficient to waive Child's right to prepare an adequate defense by interviewing Victim in an appropriate manner under court supervision. *See id.* As a result, we conclude that the effect of the district court's order was in fact an absolute restriction that prevented Child from interviewing Victim prior to trial.

The State additionally argues that even if this Court determines that an absolute restriction occurred, the State showed good cause for the restriction by presenting

14

evidence of Victim's vulnerability and defense counsel's conduct. We disagree. First, Victim's age did not constitute good cause for an absolute restriction since both parties and Victim's advocate previously agreed that Victim was subject to an appropriate interview. *See Orona*, 92 N.M. at 451, 453, 589 P.2d 1042, 1044 (concluding that the alleged victim's young age of less than thirteen years did not constitute good cause for an absolute restriction). Second, the conduct of Child's counsel did not constitute good cause for an absolute restriction where the district court was capable of developing restrictive protective measures for Victim's interview that were adequate to respond to counsel's conduct. *See id.* (concluding that the defendant's conduct did not constitute good cause for an absolute restriction where less restrictive measures could have been adopted to proceed while continuing to protect the witnesses). Specifically, we note that the State did not request an absolute restriction preventing Child from interviewing Victim, but instead requested that the "[c]ourt supervise any and all interaction between [Child's counsel] and [Victim]." As a result, we conclude that the district court could have adopted less restrictive measures to protect Victim than an absolute restriction preventing Child from interviewing Victim prior to trial.

15

Finally, the State argues that the district court's order did not prejudice Child because the Child had access to Victim's safe house interview and the interviews of other witnesses. In *Orona*, our Supreme Court determined that "[n]o more prejudice need be shown than that the [district] court's order may have made a potential avenue of defense unavailable to the defendant." *Id.* at 452, 589 P.2d at 1043. As a result of the district court's denial of an interview with Victim prior to trial, Child had no opportunity to question Victim regarding the possible mistake of identity in order to prepare a mistaken identity defense. Furthermore, the district court previously concluded that "if [Child is] going to be able to even attempt to put up a mistaken identity defense, he's almost going to have to be able to interview [Victim]." Child's attempt at trial to argue that a mistake of identity occurred was unsuccessful because no testimony was presented in support of that defense. The district court's denial of a pretrial interview with Victim denied Child the opportunity to discover any impeaching evidence. *See Layne*, 2008-NMCA-103, ¶ 13 ("Impeachment is crucial to effective cross-examination because it gives a party the opportunity to discredit a witness, so the [trier of fact] has a way to determine whether a witness is untruthful or inaccurate." (internal quotation marks and citation omitted)). Consequently, we determine that the district court's denial of the opportunity to interview Victim

16

prejudiced Child because it appears from the record available to have resulted in a potential mistake of identity defense being unavailable to Child. Because Child's due process right to prepare a defense was violated by the district court's order that denied an interview of Victim prior to trial, we reverse Child's adjudication of delinquency.

**Sufficiency of the Evidence**

Having determined that the violation of Child's right to prepare for trial mandates reversal, we now consider Child's argument that there was insufficient evidence for his adjudication of delinquency and that his charges should be dismissed. We note that retrial would implicate double jeopardy concerns if insufficient evidence was presented at trial to support Child's adjudication of delinquency. *See State v. Mascareñas*, 2000-NMSC-017, ¶ 31, 129 N.M. 230, 4 P.3d 1221 (reasoning that as long as sufficient evidence for a conviction was presented at trial, double jeopardy concerns are not implicated by reversing and remanding for a new trial).

In reviewing the sufficiency of the evidence, we analyze "whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86. "We determine whether a rational factfinder could have found that each element of the crime was established

17

beyond a reasonable doubt." *Id.* Furthermore, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

To support Child's adjudication of delinquency based on the act of third-degree CSCM as a lesser-included offense of Count III of the petition, the State was required to prove beyond a reasonable doubt that Child unlawfully and intentionally caused Victim to touch the penis of Child, that Victim was twelve years of age or younger, and that the touching occurred in New Mexico on or about July 28, 2007. *See* § 30-9-13(A) & (C)(1); UJI 14-925 NMRA.

Child argues that there was insufficient evidence that Child touched Victim's buttocks and vagina or that the touching was intentional. This argument is inconsistent with the evidence and adjudication in this case. Child's adjudication of guilt was based on Child's alleged act of unlawfully and intentionally causing Victim to touch the intimate parts of Child. As a result, we conclude that Child's argument is unsupported by the record. We further note that at trial, Victim testified that the boy named "Steven" who lived in New Mexico asked her to "[t]ouch stuff on him," and Victim drew a picture showing where she touched him. Additionally, Victim's

18

out-of-court statement regarding sexual contact between Victim and Child was introduced as an excited utterance. Finally, Child's therapist testified that Victim was suffering from an anxiety disorder, which included symptoms of arousal, regressive behavior, and nervousness around strangers. As a result, we conclude that sufficient evidence supported Child's adjudication of delinquency for the purpose of our double jeopardy analysis.

**CONCLUSION**

For the foregoing reasons, we reverse Child's adjudication of delinquency and remand to the district court for a new trial.

**IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

19

_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**RODERICK T. KENNEDY, Judge**