STANLEY T. WISNIEWSKI, Appellant, v. THE STATE OF DELAWARE, Appellee.

(*November* 5, 1957.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*E. N. Carpenter, II,* for appellant.

*Frank O'Donnell,* Chief Deputy Attorney-General, and *F. Alton Tybout,* Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 18, 1957.

BRAMHALL, J.:

This appeal presents numerous questions: The sufficiency of the evidence to sustain a conviction of murder in the second degree; the alleged suppression of testimony of police officer; the admission of colored photographs of body of deceased after surgery; the alleged inflammatory remarks of witness; the right of defendant to production of statement of witness before trial; the refusal of the Court to strike from the record evidence of the good reputation of the deceased; the admission of certain testimony; and the sufficiency of the instructions to the jury.

Since defendant was convicted in the Court below, the substantial facts are set forth in the light most favorable to the State. In January of 1956 defendant was living with deceased on Front Street in the City of Wilmington, in an apartment rented by deceased. On the evening of January 7, 1956, deceased, defendant, and a woman by the name of Pauline Oliver—reported to be the "girl friend" of deceased—were drinking in the apartment of deceased. The party becoming boisterous, the police were called to the apartment. Some trouble ensued, as a result of which deceased was arrested and taken to the City Hall jail, where he spent the night. Defendant and Pauline Oliver remained at the apartment. Deceased was released from jail the following day, returning to his apartment at approximately 5 o'clock in the afternoon. Defendant and Pauline were in the apartment. Deceased inquired of defendant as to whether or not defendant had seen his billfold, which deceased stated contained about $45. Later defendant and Pauline went out and purchased some wine and whiskey and returned. The drinking party continued. The wife of the landlord called and asked for the payment of the rent. In the conversation between her and deceased, deceased requested her to ask defendant to leave, which she did. Defendant started packing his clothes in the bedroom. Deceased was in the kitchen. Defendant went into the kitchen and asked deceased for his wine. Deceased told him he didn't have it. An argument ensued between the two men while standing between the kitchen door. A fight followed. Who

started the fight is not entirely clear. The State's witness, Pauline, testified that defendant and deceased "just came together." However, shortly thereafter defendant picked up a heavy white chair and hit deceased with it. The chair having broken, defendant continued to strike deceased with one of its legs. Deceased fell back into the bedroom near the bed. He never got up. Defendant continued to beat deceased with the leg of the chair. Pauline begged defendant to stop hitting deceased and begged deceased to give defendant his wine. Defendant stopped beating deceased, came back to the kitchen door where Pauline was, and told Pauline that if she didn't shut up he would "give her some." Defendant then returned and resumed beating deceased, who had remained on the floor. Defendant then stopped, came to the kitchen door, and requested Pauline to call an ambulance. When she refused, defendant went out for the purpose of doing so himself. Pauline then went into the bedroom, found a knife on the lounge on the right of the front door on entering and took it back to the kitchen. This was the first time during the altercation that Pauline had seen the knife.

Defendant returned. The police arrived shortly thereafter. Deceased remained unconscious. The police called the ambulance. Deceased was taken to the hospital, where it was ascertained that he had sustained a fractured skull, a fractured arm, a number of fractured ribs on both sides of his body, numerous lacerations and contusions on his head, face, and other parts of his body. He died two days later.

Defendant testified that he was attacked by deceased, who had a knife and attempted to use it on defendant. Defendant said that he grabbed the blade of the knife and took it away from deceased. Defendant further testified that a little later deceased was about to pull out a second knife, as a result of which defendant picked up a chair and hit deceased with it. Only one knife was found in the room. When defendant informed the police that deceased was endeavoring to strike him with a knife, Pauline called him a liar. Defendant denied that he stopped

beating deceased, while he went to the kitchen door and threatened Pauline, or that he then returned and continued beating deceased with the chair leg. He said that he did not get up until after the fight was over.

Defendant in his brief has set forth numerous reasons why he should be granted a new trial. We have reviewed carefully all the evidence in this case and have considered the intrinsic fairness of the trial in the light of defendant's reasons. We are convinced that there was no error in the trial of this case sufficient to require a reversal of the conviction. The deceased received a horrible beating at the hands of defendant. The evidence presented on behalf of the State was strong and convincing, sufficient beyond question to sustain a conviction of murder in the second degree.

The first, second, third, and ninth reasons advanced by defendant relate to the sufficiency of the evidence to justify a conviction of murder in the second degree. Defendant contends that there was no evidence of wicked indifference to human life; that even if there were such evidence there was sufficient provocation to justify the homicide; and that, in any event, the homicide was committed in self defense. Defendant relies on the fact that a fight took place; that there was no evidence of threats or indifference to human life or any evidence of cruelty since the beating took place during the course of the fight; that there was no evidence of any intent to kill. These contentions all relate to the sufficiency of the evidence to sustain a conviction of second degree murder.

It was the province of the jury to fix the degree of guilt of defendant in the light of all the evidence, once the court had determined its sufficiency in law to warrant the submission of the issues to the jury for its determination. Of course, there was testimony offered by defendant which, if believed, would have reduced the crime to manslaughter, or, perhaps, sustained a plea of self defense. But those questions were for the jury to determine. The evidence submitted by the State showed that de-

ceased received a horrible beating at the hands of defendant by means of a chair and chair leg. The contentions that deceased was as much responsible for the fight as the defendant, and that defendant's conduct showed no intent to kill or reckless indifference to human life were matters to be weighed by the jury and decided in the light of all the evidence. If the jury believed the State's version of the death—as by their verdict we must assume that they did—a verdict of murder in the second degree was fully justified under any theory of the quantum of evidence necessary to sustain the verdict.

Did the trial court commit prejudicial error in admitting certain colored photographs of deceased showing incisions created by the surgeon, and not by the defendant? Defendant objects to the admission of certain colored photographs of deceased as inflammatory and prejudicial. His objection is particularly directed to the display of certain scars on the body of the deceased evidencing wounds that had been made during the course of the autopsy, and that were not the result of injuries inflicted by the defendant. Defendant asserts that these photographs were not necessary to establish the State's case, were intended to inflame the emotions of the jury, and were highly prejudicial. Prior to offering them, defendant argues, the State had already introduced ample evidence showing the condition of the body of the deceased shortly after the assault; and evidence of post-mortem wounds was both unnecessary and misleading.

The admission of photographs of such character generally lies within the discretion of the trial court. *Bantum v. State*, 7 *Terry* 487, 85 *A*. 2d 741. Five photographs were offered in evidence. After objection the trial court admitted three and rejected two. The photographs in question were made by the State Medical Examiner, who was thoroughly experienced in taking photographs under such conditions. Assuming that the lower court abused its discretion in permitting these photographs to be shown to the jury, the fact that the photographs were taken

after the performance of the autopsy and showed marks made for the purpose of the autopsy—which the autopsy surgeon pointed out to the jury—does not alone constitute prejudicial error. See 2 *Wharton's Criminal Evidence,* sec. 757, p. 1282. It is true that their relevance to the issues of the case was very slight indeed and the photographs might well have been excluded as irrelevant. But, even assuming that it was error to admit them, we do not think they were sufficiently prejudicial to require a reversal of the judgment. The deceased received a terrible beating, resulting in numerous fractures, lacerations, and contusions on his head, body and arms. When found by the officers, he was lying on the floor in a pool of blood. A picture which might have been taken under these circumstances would necessarily have been horrible and revolting. In fact, it might well have been that photographs taken of the deceased under such conditions would have been much more inflammatory than the photographs actually introduced. Moreover, the witness taking the photographs, the State Medical Examiner, testified explicitly and minutely as to every incision or other marks on the photographs not the result of the beating. Under such circumstances, assuming that the trial court committed error in admitting these photographs, we do not think that the defendant was prejudiced thereby and that a new trial should be granted for this reason.

 ■ Defendant complains of the suppression of evidence by the State in refusing him permission to interrogate a police officer subpoenaed by defendant to testify in his behalf at the trial. The witness in question had arrested deceased the night before the homicide and had had some difficulty with deceased in taking him to jail. After the praecipe for the issuance of a subpoena for this officer had been filed, he was instructed not to discuss this case with defendant's counsel.

Defendant contends that by reason of these instructions he was deprived of a fair trial because of the suppression of whatever evidence the officer might have been able to give. Defendant further asserts that he was prejudiced because, not knowing exactly what the witness would say—since he could not ask

questions to which he did not know the answers—he was improperly limited in his examination. Although defendant's counsel learned of this situation on the evening of October 15th—two days before the beginning of the trial on the 17th—he failed to call the matter to the attention of the trial court or in any manner to make a request of the Court relative to the examination of this witness before calling him to the witness stand. The witness testified at the trial and was examined at great length by the State and fully cross-examined by defendant's counsel.

We think that the refusal of the State to permit defendant's counsel to examine the police officer prior to calling him to the witness stand was improper. The witness was under subpoena. Of what avail is the defendant's right to use compulsory process for the attendance of a witness if the defendant may not discuss with a witness in advance, the facts within the witness' knowledge? We think defendant's counsel had this right. *State v. Papa*, 32 *R. I.* 453, 80 *A.* 12; *Wilson v. State*, 93 *Ga. App.* 229, 91 *S. E.* 2d 201. But defendant's counsel had an opportunity before the trial and during the trial, before the witness was called, to ask the trial court for an appropriate order sustaining his right to examine the witness. On proper application the court would undoubtedly have ordered the witness to discuss any facts within his knowledge relative to the crime which were not privileged. That there is no specific rule of court upon the point is immaterial. The trial court would have the inherent right, in the interest of justice, to overrule the order of the enforcing authorities since such an order was in effect an interference with the subpoena.

Moreover, there is an additional reason why the refusal of the officer to talk to defendant's counsel did not constitute reversible error. His testimony while on the stand was full and complete. The direct and cross-examination would seem to indicate that all the facts within his knowledge with respect to the crime were fully brought out.

We find nothing of substance in this objection.

■ Was the refusal of the trial court to permit defendant's counsel to inspect the statements of witness, Pauline Oliver, prior to trial, prejudicial error? This witness prior to trial had given two formal statements, one reduced to writing and signed by the witness, the other recorded on the dictaphone and reduced to writing prior to trial. The first statement was produced the day before the witness testified; the second at the beginning of defendant's cross-examination of the witness. Although a request by defendant's attorney for a recess for the purpose of examining the second statement was granted, defendant nevertheless contends that the refusal to produce these statements as requested was prejudicial error.

Defendant's motion was bottomed upon Rule 16 and Rule 17(c) of the Rules of Criminal Procedure, *Del. C. Ann.*, of the Superior Court. Rule 16—which is the same as Rule 16 of the Federal Rules of Criminal Procedure, 18 *U. S. C. A.*—except that it includes, in addition, the words "confessions or written statements"—provides that upon motion the trial court may order the Attorney General to permit defendant to inspect and copy or photograph designated "books, papers, documents, tangible objects, confessions or written statements * * * upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable." Rule 17 relates to the manner of the issuance of a subpoena, paragraph (c), providing that the Court may direct that books, papers, documents, or objects designated in the subpoena be produced at a time prior to the time they are to be offered in evidence to be inspected and copied.

The most recent case relating to the production of documents and statements is the case of *Jencks v. United States,* 353 *U. S.* 657, 77 *S. Ct.* 1007, 1 *L. Ed.* 2d 1103. Although recognizing the fact that in that case the court is called upon to consider only production at the trial, appellant cites it as delineating the policy of full disclosure in criminal cases. In that case the Supreme Court of the United States held that when the govern-

ment called a witness to testify, it was bound upon demand to disclose any prior statement of the witness that might be in the possession of the prosecution. As we interpret that case, it does not provide for the production of these statements prior to the trial. In none of the opinions filed in that case do we find any reference to Rule 16 or 17 of the Federal Rules of Criminal Procedure. Neither is any mention made of disclosure or production of statements in advance of trial. The thrust of that opinion, as we understand it, is that the defendant is entitled to any statements made by a government witness for the purpose of discrediting that witness, after the credibility of the witness shall have been put in issue.

This exact question was raised and determined in the Superior Court in the case of *State v. Thompson*, 11 *Terry* 456, 134 *A*. 2d 266, in which that Court for the reason heretofore set forth refused to order the production of statements and other papers prior to trial. We approve of that decision. See also *United States v. Benson, D. C. S. D. N. Y.*, 20 *F. R. D*. 602. There is no merit to this contention.

 Was defendant prejudiced by alleged inflammatory remarks of the witness Pauline Oliver? Relative to a conversation between the witness and one Joseph Wisniewski, brother of defendant, the following question was asked and answer given:

"Q. Did you say to him that you would see that Stanley Wisniewski got punished for this instead of you? A. I did not. He even told me he should be punished himself. He said he killed a man one time before."

A motion by defendant to strike the answer was made immediately. The motion was granted and the jury instructed not to consider the last statement of the witness. No motion for a mistrial was made. Defendant contends that the remark was so inflammatory that it necessarily resulted in an unfair trial.

We do not think that defendant was prejudiced by this testimony. Assuming that the answer was not responsive to the

question of defendant's counsel and that it related to the commission of another crime by defendant on some previous occasion, defendant's objection was promptly sustained and the jury properly cautioned to disregard the statement of the witness.

Did the trial court commit prejudicial error in refusing to strike the evidence of the good reputation of deceased? In a rebuttal to testimony offered by defendant as to the bad reputation of deceased for violence and disturbance, the State introduced certain testimony for the purpose of proving the good reputation of deceased in that respect. Defendant did not object on direct examination to the testimony of these witnesses, but on cross-examination he endeavored to show, with some success, that these witnesses had heard of several instances concerning actions of deceased tending to rebut his good reputation. It also appeared that these witnesses had not heard the reputation of deceased discussed to any degree. Defendant moved to strike their testimony from the record on the ground that there was no basis in fact to substantiate the testimony of these witnesses to the effect that the reputation of deceased was good.

There is no merit to these objections. At most, they went only to the weight to be given to the testimony. Its value was for the jury to determine. Since the decision of the Supreme Court in this State in 1927 in the case of *Valent v. State*, 3 *W. W. Harr.* 407, 138 *A.* 643, the law in this State has been that one who is well acquainted with a person whose reputation is under consideration may testify relative to the reputation of that person, even though he has never heard it discussed, on the ground that the fact that one's character and reputation is not discussed is excellent evidence that they are good. It was for the jury to determine what weight, if any, should be given to this testimony.

In his closing summation to the jury, the Chief Deputy Attorney General informed the jury that defendant's counsel had "talked" with the witness, Pauline Oliver. The record did not disclose any such conversation. Counsel for defendant, in stating to the Court his objection to this remark, said that he

had not talked with this witness, although he had had an investtigator go around and talk with Mrs. Oliver, but that that testimony was never introduced in front of the jury.

We do not see how defendant could have been prejudiced by this statement. Although it is true that the Chief Deputy Attorney General was in error in making this remark, there is no contention on the part of defendant that defendant's counsel was prevented from talking with this witness, or, in fact, that he had ever made a request to do so. Counsel for defendant immediately interposed an objection, which was sustained by the trial court. The Court at the same time instructed the jury to disregard the statement.

Did the trial court err in admitting evidence offered for the purpose of corroborating certain testimony of the witness Pauline Oliver after an attempt on the part of defendant to impeach her testimony by showing that the testimony was not included in a prior statement signed by her? The witness Pauline -Oliver testified that the night before the homicide was committed the defendant attempted to compel her to perform an unnatural act. Defendant did not object to this testimony, but on cross-examination attempted to impeach it by showing that such testimony was not included in a written statement which the witness signed on January 9, 1956. The witness admitted that such testimony was not contained in this statement, but stated that she had given this information to the police officers at the time the statement was taken. The witness was also cross-examined relative to a transcript of a statement made by her in the Attorney General's office in March of 1956, when she was called to appear before the grand jury. She testified that at that time such testimony was included in the transcript. A police detective was then called by the State. He testified that Pauline's oral statement as given on January 9, 1956, included the testimony relative to the attempt of defendant to have unnatural intercourse. Objection was made by defendant, but the Court admitted the testimony solely for the purpose of reestablishing the credibility of the witness and so instructed the jury.

█ The more generally accepted, and perhaps the sounder, view is not to permit evidence of a former consistent statement except where the trial judge in the exercise of sound discretion is satisfied that the credibility of the witness is impeached in such manner and to such extent that he feels that the evidence should be admitted to sustain his credibility. See *Wigmore on Evidence,* 3rd ed., vol. IV, sec. 1126, p. 199; *Wharton's Criminal Evidence,* 12th ed., vol. 3, sec. 968, p. 426; 58 *Am. Jur.,* Witnesses, § 819, p. 458. However, where an effort is made to show that the testimony of a witness is given under bias or undue influence or that the facts had been concealed under conditions which would warrant the belief that if they were true the witness would likely have revealed them, evidence that the witness on occasion so near to the event involved and so long prior to the trial that the effect of the statement could not have been foreseen had made statements consistent with his testimony in court may be introduced to refute the existence of the factors which may have tended to influence the witness. *Commonwealth v. Retkovitz,* 222 *Mass.* 245, 110 *N. E.* 293; *State v. Skillings,* 99 *N. H.* 427, 113 *A.* 2d 490; *State v. Neiman,* 123 *N. J. L.* 341, 8 *A.* 2d 713; *State v. Kane,* 9 *N. J. Super.* 254, 75 *A.* 2d 894; *Commonwealth v. Patskin,* 372 *Pa.* 402, 93 *A.* 2d 704, certiorari denied 74 *S. Ct.* 534, 347 *U. S.* 931, 98 *L. Ed.* 1082. See also *Wharton's Criminal Evidence,* 12th ed., vol. 3, § 969, p. 435-40; *Wigmore on Evidence,* 3rd ed., vol. IV, § 1128 and § 1129; 58 *Am. Jur.,* Witnesses, § 827 and § 828, pp. 463 and 464.

█ We think that the cross-examination of this witness by defendant's counsel was clearly for the purpose of impeaching her testimony by showing inconsistency between her testimony and a prior statement given to police. Defendant's counsel cross-examined the witness sharply upon the point. The trial court in its discretion admitted this rebuttal testimony of the police officer to the effect that the witness had in fact made orally to him the same statement given by her on the witness stand. The relevancy of this rebuttal to rehabilitate the credibility of the witness is manifest. We find no error.

■ Defendant complains of certain alleged errors of the trial court in his charge to the jury. Among others, he takes exception to the refusal of the trial court to charge the jury relative to the suppression of evidence in the following language:

"In this case there has been testimony that a police officer was forbidden by his superiors to discuss the facts of the case with the attorney for the defendant, notwithstanding the fact that the attorney for the defendant had, prior to such instructions to that officer, subpoenaed that very officer as a witness for the defense. The defendant had a constitutional right to call any witness whom he needed to testify and he further had the right, personally or by his attorney, to ascertain what that witness's testimony would be by an interview prior to trial.

"You, as fairminded members of the jury, may, in reviewing the evidence before you, take into consideration the fact that the prosecution has prevented the defense from accurately ascertaining the facts prior to trial. You may fairly infer from this suppression or attempted suppression of evidence, that the prosecution desired to prevent the defense from locating testimony which would have supported the defense or which would have been unfavorable to the prosecution. *State v. Papa*, 32 *R. I.* 453, 80 *A.* 12 (*Sup. Ct.* 1911); [*Del. C. Ann.*] Delaware Constitution, Article I, Section 7."

We have held that while the directions given by the State instructing the police officer not to talk with the attorney for the defendant were improper we did not consider that defendant had been prejudiced thereby. Obviously, if there was no prejudice, it would have been improper for the trial court to charge the jury as requested by defendant.

■ Defendant requested a charge that "one who is attacked by a deadly weapon may not reasonably be supposed to retain the presence of mind, calmness and composure necessary to weigh with nicety the question whether some other means short of taking a life would answer the purpose."

Such a charge would have been improper because the evidence as to whether or not deceased had a knife at the time defendant testified he hit deceased with the chair leg was in serious dispute. The trial court charged the jury fully and completely on the question of self defense. No exception was taken by defendant to this portion of the charge except as to the use of the word "necessity" in the statement "the right of self defense rests upon necessity." Defendant contended that the court should have used the words, "reasonable necessity." Of course, the court in its use of the word "necessity" intended to give to that word the meaning of "reasonable necessity." There is no merit to this objection.

 Defendant objected to the refusal of the trial court to charge the jury that the chair leg was not a deadly weapon and that no malice or intention to kill could be inferred from its use. That court left to the jury to determine the question of whether or not the chair leg constituted a deadly weapon. We think that its instructions as to the use of a deadly weapon were correct. If the jury believed the evidence offered by the State as to the manner in which the chair leg was used by defendant, it was entitled to consider it as a deadly weapon. In case of doubt the question as to whether or not an instrument constitutes a deadly weapon depends to a large extent upon the manner in which it was used. *State v. Jones*, 115 *N. J. L.* 257, 179 *A.* 320; *Commonwealth v. Prenni*, 357 *Pa.* 572, 55 *A.* 2d 532. See 26 *Am. Jur.*, Homicide, § 8, p. 160. In the *Prenni* case the Supreme Court of Pennsylvania held that a stick similar to a broom handle was a deadly weapon. The evidence is clear and undisputed that the deceased received a horrible beating from defendant by the use of the chair leg. Any conclusion that the jury may have reached from this evidence to the effect that the chair leg was a deadly weapon was clearly justified.

We have carefully considered the evidence and the many questions of law raised by defendant's counsel. We are satisfied that defendant had a fair trial, that he was ably defended and that none of his substantial rights was prejudiced.

Accordingly, the judgment is affirmed.

Since the argument in this case, we have received from the City Solicitor of the City of Wilmington a request for permission to appear *amicus curiae* and to file a brief presenting the view of the Department of Public Safety of the City of Wilmington on the applicability of certain rules of that Department which prohibit a police officer from communicating information regarding a case investigated, or to be investigated, by a member of the Bureau of Police.

This rule was not invoked at the trial and was not before us on appeal. We therefore see no reason why such application should be granted at this late date.