The appellant, Gilbert Hewlett, was convicted of child abuse, assault in the second degree, and rape in the first degree, and received consecutive sentences of ten years, ten years, and life imprisonment. Three issues are raised on appeal.
The State's evidence tended to show that on January 30, 1985, the appellant brought his fourteen-year-old daughter (the victim) back to Harvest Elementary School after an absence of several days. Appellant told Patsy Raby, the school's instructional leader, that the victim's absence was due to bad weather and frozen pipes. However, Ms. Raby observed that the victim had several noticeable scratches and bad sores on her face and arms. She also noticed several patches of missing hair on the victim's head. Appellant explained these injuries by stating that the victim had been unruly and that he was "about to get her back to where she would obey him."
Judy Schwartz, a special education teacher at Harvest, testified that the victim had been in her class. She described the victim as a slow, loving, kind, hardworking student. The victim was absent from school many consecutive days in January, and when she returned to school on January 30, Ms. Schwartz observed the missing hair, burn marks, and swollen lips on the victim.
The victim was taken to an emergency shelter for neglected and abused children. The next day Billie Long, director of the *Page 202 
shelter, observed that the victim had blood oozing from large areas on her legs. Ms. Long then took the victim to Dr. Robert Stewart's office. Dr. Stewart examined the victim and found she had large, ulcerating wounds on her thighs, as well as injuries to her face, arms, and head. He admitted her to the hospital to care for these injuries.
Dr. Theresa Spalding examined the victim upon admission to Huntsville Hospital. In addition to the ulcerated leg wounds, she observed multiple scars and abrasions all over the victim's body. Dr. Spalding also saw loss of hair on the victim's scalp and saw both old and new scars on her face. She further observed fingernail scars on the victim's ears and raised scars on her arms. The skin on the victim's right cheek was so thin that Dr. Spalding could see the blood vessels underneath. Such a condition was caused by repeated trauma to her face. A vaginal inspection revealed that the victim had a bacterial infection usually the result of sexual intercourse. The victim remained in the hospital for approximately two weeks, during which time she told Dr. Spalding that her father had beaten her.
The victim testified that her father, the appellant, had beaten her on the legs with a chair leg, and as a result, she had had to stay in the hospital a long time. Three days after her father beat her, he used scissors to try to remove skin from her left leg. Her father also pulled her hair out, tried to pull her ears off, and tried to choke her. The appellant also beat the victim on her back, which caused her back to be severely scarred. The victim stated that while she was in the seventh grade her father also had sex with her on more than one occasion. She said she did not let him have sex with her, but did not try to stop him because she was afraid he would do something crazy like try to hurt her. While she was in the seventh grade the victim also had sex with several of her father's friends. The victim identified photographs of herself depicting the injuries inflicted on her by the appellant.
The State's last witness was Lee Weaver, an investigator with the Madison County Sheriff's Department. Ms. Weaver testified that after she informed appellant of his Miranda rights, he told her that he had been having trouble with the victim for some time, in that she was having sexual relations with several of his friends. Appellant admitted that he had hit the victim with a paddle, and subsequently noticed blood coming from her clothes. The victim told appellant the bleeding was caused by his paddling. Appellant further said he must have caused her other injuries, and admitted that his anger sometimes got the best of him. He also told Ms. Weaver that the victim "had put spells on him" which kept him from moving his hands.
Appellant's defense consisted of attacking the credibility of the victim as a witness, attempting to prove that she was mentally retarded, and contending that she was obsessed with sex.
 I
Appellant first contends that the trial court abused its discretion in allowing the child victim to testify without first being examined by the court to determine her capacity to testify.
Section 12-21-165(a), Code of Alabama 1975, provides that "[p]ersons who have not the use of reason, such as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, are incompetent witnesses." However, with regard to children, an exception has been made to §12-21-165(a). Section 15-25-3(c), Code of Alabama 1975 (1986 Supp.), provides:
 "Notwithstanding any other provision of law or rule of evidence, a child victim of sexual abuse or sexual exploitation, shall be considered a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony. The court may also allow leading questions of such child witnesses in the interest of justice." *Page 203 
This section is applicable "[i]n any criminal prosecution for a sexual offense wherein the alleged victim is a child under the age of 16 years and in any criminal prosecution involving the sexual exploitation of a child under the age of 16." §15-25-1, Code of Alabama 1975 (1986 Supp.).
The victim was under the age of 16 at the time of the events constituting the crimes in this case. Appellant states in his brief that the victim was 14 years of age at the time. Therefore, § 15-25-3(c) applied, and it was not necessary for the trial court to examine the witness to determine her capacity to testify. In any event, the prosecuting attorney examined the victim before direct examination to be certain that the victim understood that she was obliged to tell the truth while testifying. Thus, no error was committed in allowing the victim to testify. Moreover, as noted in Merton v.State, 500 So.2d 1301 (Ala.Cr.App. 1986), per Presiding Judge Bowen, such impediments to a witness's capacity to testify may be waived by failure to object, citing Conner v. State,52 Ala. App. 82, 87, 289 So.2d 650 (1973), cert. denied 292 Ala. 716, 289 So.2d 656 (1974).
 II
The appellant next contends that the prosecutor was guilty of misconduct in that he secreted the victim, thereby preventing her from being interviewed by defense counsel prior to trial. The victim was placed in foster care by the State's Department of Pensions and Security (currently known as the Department of Human Resources) following her discharge from the hospital.
It has long been the law in this state that a defendant is normally entitled to access to prospective witnesses. Indeed, in Hill v. State, 366 So.2d 296, 312 (Ala.Cr.App. 1978), aff'd,366 So.2d 318 (Ala. 1979), this Court stated:
 "Certainly the prosecutor may not prevent a witness from giving a statement to the defense attorney. Any defendant has the right to attempt to question any witness prior to trial he so desires in the absence of intimidating influence. However, by the same token, any witness has an attending right to refuse to be so interviewed. Golson v. State, 34 Ala. App. 396, 40 So.2d 725
(1949) and cases cited therein; see also Veith v. State, 48 Ala. App. 688, 267 So.2d 480 (1972) and cases cited therein."
See also United States v. Caldwell, 750 F.2d 341, 346 (5th Cir. 1984), cert. denied, 471 U.S. 1007, 105 S.Ct. 1873,85 L.Ed.2d 166 (1985); United States v. Pepe, 747 F.2d 632, 654 (11th Cir. 1984).
Precedents from other jurisdictions have gone into some of the aspects of this issue.
When the witness sought to be interviewed is a child, the child's guardian may make the decision whether the child is to be interviewed. Dover v. State, 250 Ga. 209, 296 S.E.2d 710,712 (1982), cert. denied, 459 U.S. 1221, 103 S.Ct. 1228,75 L.Ed.2d 462 (1983). Furthermore, if the child is in the custody of the State's social services agency, that agency may refuse counsel the opportunity to interview the witness prior to trial. Noles v. State, 172 Ga. App. 228, 322 S.E.2d 910, 911
(1984). One court has gone so far as to hold that a trial court does not have the authority to order a nonparty, such as a social services agency, to allow the defense to interview a child victim who is in the custody of the nonparty. State exrel. Roach v. Roth, 293 Or. 636, 652 P.2d 779, 781 (1982).
In the present case, the appellant contends that the prosecutor was guilty of misconduct by not arranging an interview with the victim, who was in the custody of the State Department of Pensions and Security. The decision, however, to allow appellant's counsel to interview the victim is not left up to the prosecuting attorney. Instead, it is a decision to be made by the victim's guardian, in this case the Department of Pensions and Security. The fact that the victim was in the custody of the State's social services agency did not place her in the custody of the prosecuting attorney. The prosecuting attorney had no more responsibility to arrange an interview with the victim in this case than he would have in any other case. This question is *Page 204 
presented on the issue of prosecutorial misconduct; we hold that the prosecuting attorney was not guilty of misconduct in not arranging for an interview between the victim and defense counsel.
 III
Appellant further contends that his conviction for child abuse should be reversed because of a void indictment. It was insufficient, he argues, for failure to apprise him of the charges against him in that the means of committing the crime were not clearly alleged.
An indictment must allege all the elements of the offense charged, and must also sufficiently apprise the accused of what he must be prepared to defend. Fields v. State, 494 So.2d 477,479 (Ala.Cr.App. 1986); Hardy v. State, 409 So.2d 996, 1001
(Ala.Cr.App. 1982). Indictment forms for most criminal offenses are set out in § 15-8-150, Code of Alabama 1975; however, no indictment form for child abuse is contained in this section.
 "If there is no indictment form for an offense set out in Code § 15-8-150, then an indictment which closely parallels the language of the statute creating the offense is generally valid. Worrell v. State, Ala.Cr.App., 357 So.2d 373, cert. denied, Ala., 357 So.2d 378 (1978); Manson v. State, Ala.Cr.App., 349 So.2d 67, cert. denied, Ala., 349 So.2d 86 (1977); Code § 15-8-23.
 "Pursuant to Code § 15-8-25, an indictment must state the facts constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is intended. An indictment must likewise apprise the accused not only of the nature of the offense, but also of the particular act or means by which it was committed. Chambers v. State, Ala.Cr.App., 364 So.2d 416, cert. denied, Ala., 364 So.2d 420 (1978). See also: Andrews v. State, Ala.Cr.App., 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977)."
Harrison v. State, 384 So.2d 641, 643 (Ala.Cr.App. 1980).
Here, the indictment against the appellant is clear and specific. The indictment charged that he "did torture, willfully abuse, cruelly beat or otherwise willfully maltreat [the victim], a child under the age of 18 years, by to-wit: Beating her about the head, torso, and arms, in violation of § 26-15-3 of the Code of Alabama, against the peace and dignity of the State of Alabama." This indictment closely parallels the language of § 26-15-3. Moreover, it states sufficient facts, in clear and concise language, to enable the appellant to understand the nature of the crime charged and the particular acts against which he must prepare his defense. The indictment informed the appellant that the nature of the crime he was charged with was child abuse. The particular act or means by which appellant committed the child abuse was alleged to be beating the victim about her head, torso, and arms. Having been apprised of the crime he was charged with committing and the means by which he committed it, the appellant was not misled, nor was his ability to defend himself hampered, by the indictment's failure to set out the specific instruments by which he carried out the beating. He was put on notice that he was charged with all blows inflicted to the victim's head, torso, and arms.
We find that the indictment in the instant case was sufficient and, therefore, that the trial court correctly denied the appellant's motion to dismiss the indictment.
The judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 205