TAYLOR, Presiding Judge.
The appellant, David “Butch” Dixon, was convicted of causing a child to become or remain a child in need of supervision, in violation of § 12-15-13, Code of Alabama 1975. He was fined $100 plus court costs and was sentenced to 30 days in the county jail; however, this sentence was suspended and the appellant was placed on probation for 18 months. The terms of his probation are that he is to commit no criminal acts, have no intentional contact with the 16-year-old female victim in this case (hereinafter referred to as “the victim”) and not participate in any volunteer programs at White Plains High School.
The evidence tended to show that the victim met the appellant at White Plains High School where she was a student and he was a volunteer coach with the physical education department. The two began dating in August 1989. The victim’s father soon learned about the - relationship and because the appellant was seven years older than the victim, he instructed them to stop seeing each other. Nevertheless, the relationship between the victim and the appellant continued.
During the last week of January 1990, the victim’s parents went to a convention in Mobile, Alabama. The victim was to stay with a friend. When the victim’s parents returned from Mobile, they stopped at the friend’s house to pick up their daughter but were told, however, that their daughter had not spent any time there.
• When confronted by her father, the victim confessed to having spent two nights with the appellant. On the first night she spent with him, they had sexual intercourse. She admitted that even though the appellant had picked her up in his car, it had been her idea to stay with him. The next day, the victim’s father signed a warrant against the appellant and had his daughter declared “in need of supervision.”
*31 The appellant raises two issues on appeal.
I
The appellant first contends that the complaint was insufficient to apprise him of the specific charges against him because particular facts were not alleged.
The complaint charging the appellant with causing the victim to become a child in need of supervision stated:
“David Dixon did cause [the victim], a female child sixteen years of age, to become or remain a Child in Need of Supervision in that the said David Dixon did willfully aid or encourage [the victim] to leave the lawful custody of her parents ... in violation of Title 12-15-13 of the Code of Alabama.”
Section 12-15-13(a), Code of Alabama 1975, states, in pertinent part:
“It shall be unlawful for any parent, guardian or other person to willfully aid, encourage or cause any child to become or remain delinquent, dependent or in need of supervision or by words, acts, threats, commands or persuasions, to induce or endeavor to induce, aid or encourage any child to do or perform any acts or to follow any course of conduct which would cause or manifestly tend to cause such child to become or remain delinquent, dependent or in need of supervision or by the neglect of any lawful duty or in any other manner contribute to the delinquency, dependency or need of supervision of a child....”
Section 12-15-l(4)(b), Code of Alabama 1975, states that a child is in need of supervision when the child “[d]isobeys the reasonable and lawful demands of his parents, guardian or other custodian and is beyond their control.”
In Hewlett v. State, 520 So.2d 200 (Ala. Cr.App.1987), this court held:
“An indictment must allege all the elements of the offense charged, and must also sufficiently apprise the accused of what he must be prepared to defend. Fields v. State, 494 So.2d 477, 479 (Ala. Cr.App.1986); Hardy v. State, 409 So.2d
996, 1001 (Ala.Cr.App.1982). Indictment forms for most criminal offenses are set out in § 15-8-150, Code of Alabama 1975; however, no indictment form for child abuse is contained in this section.
“ ‘If there is no indictment form for an offense set out in Code § 15-8-150, then an indictment which closely parallels the language of the statute creating the offense is generally valid. Worrell v. State, Ala.Cr.App. 357 So.2d 373, cert, denied, Ala., 357 So.2d 378 (1978); Manson v. State, Ala.Cr. App., 349 So.2d 67, cert. denied, Ala., 349 So.2d 86 (1977); Code § 15-8-23.
“ ‘Pursuant to Code § 15-8-25, an indictment must state the facts constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is intended. An indictment must likewise apprise the accused not only of the nature of the offense, but also of the particular act or means by which it was committed. Chambers v. State, Ala.Cr.App. 364 So.2d 420 (1978). See also: Andrews v. State, Ala.Cr.App. 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977).’
“Harrison v. State, 384 So.2d 641, 643 (Ala.Cr .App.1980).”
520 So.2d at 204.
In the present case, we are of the opinion that the complaint against the appellant is clear and specific. It states sufficient facts, in concise language, to enable the appellant to understand the nature of the crime charged and the particular acts against which he must prepare his defense. The complaint informed the appellant that the crime he was charged with was causing a child to become in need of supervision. The particular act or means by which the appellant committed this crime was alleged to be by willfully aiding or encouraging the victim to leave the lawful custody of her parents. Moreover, the complaint closely parallels the language of § 12-15-13(a), Code of Alabama 1975.
Furthermore, the fact that the date was not alleged in the complaint is not *32 grounds for reversal. The date of the offense need not be alleged in the indictment or complaint unless it is a material ingredient of the crime. Stout v. State, 547 So.2d 894 (Ala.Cr.App.1988), aff’d, 547 So.2d 901 (Ala.1989); Holmes v. State, 497 So.2d 1149 (Ala.Cr.App.1986). Therefore, no error has occurred in this regard.
II
The appellant also contends that the evidence was insufficient to sustain his conviction. We must agree with this contention.
The crux of this issue lies in the definition of “custody” as it pertains to the parent/child relationship. “Custody” is best described in terms of a custodial environment; the latter exists when a child naturally looks to a parent in that home for guidance, discipline, necessities of life, and parental comfort in a stable, settled atmosphere. Westrate v. Westrate, 124 Wis.2d 244, 369 N.W.2d 165 (App.), review denied, 125 Wis.2d 583, 375 N.W.2d 215 (1985). “Custody” embraces the sum of parental rights with respect to the rearing of a child, including his care; it includes the right to a child’s services and earnings and the right to direct his activities and make decisions regarding his care and control, education, health, and religion. Trompeter v. Trompeter, 218 Kan. 535, 545 P.2d 297 (1976). Thus, this court must decide whether the appellant willfully aided or encouraged the victim to leave the lawful custody of her parents as charged in the complaint.
This issue is one of first impression for this court, so we must look outside the State of Alabama for authority. Texas addressed a similar issue in Cunyus v. State, 727 S.W.2d 561 (Tex.Cr.App.1987). In that case, the appellant was convicted by the trial court of enticement of a child, in violation of V.T.C.A. Penal Code § 25.04(a), which provides:
“A person commits an offense if, with the intent to interfere with the lawful custody of a child younger than 18 years, he knowingly entices, persuades or takes the child from the custody of the parent or guardian or person standing in the
stead of the parent or guardian of such child.”
The facts which gave rise to that conviction were that the appellant befriended 5 or 6 little boys between the ages of 6 and 12 on August 19, 1984, at Oakdale Park. In addition to playing various games with them, he also purchased them refreshments. The appellant further told them that he would buy them some beer if they would accompany him to a movie theater. One of the boys called his mother to ask her if he could go to the theater. His mother told him that he could not go because “you don’t know that man.” Consequently, they did not go to the theater, nor did the appellant buy them any beer. Id. at 562-63.
Later that afternoon, the appellant offered to take three of the boys, including the one who had earlier called his mother, home. They accepted the appellant’s offer, got into the back of his pickup truck, and were taken home. During the ride, the appellant tossed into the back of the truck a sack of “dirty books” and told the boys to look at them, which they did. Id. at 563.
The appellant contended that the evidence was insufficient to sustain his conviction. More specifically, the appellant argued that the stated had failed to prove that he intended to interfere with the parents’ lawful custody of their children. The Texas Court of Criminal Appeals agreed with the appellant’s contention and in so doing held:
“Comparing the concept of custody to the appellant’s conduct we are of the opinion that there is insufficient evidence to prove the appellant intended to interfere with the complainant’s parents’ custody. The appellant’s offer to take the children to the movie, buy them beer, and even exposing them to the obscene magazines, no matter how otherwise outrageous, cannot validly be interpreted as an offer that would interfere with the parents’ ‘right to establish the child’s domicile ...,’ Leithold v. Plass, [413 S.W.2d 698, 700 (Tex.1967)], ... or intrude upon the parents’ exercising their
*33 right to ‘care [for] and control ... the child....’ Id.
[[Image here]]
“The appellant’s conduct ... was unacceptable adult behavior. There is no question that he tried to persuade them to go somewhere; however, the mere offer of an activity to a child which would remove the child from where the parents or legal guardians have permitted the child to be will not alone constitute an offense. If we were to hold that every offer to a child of an activity outside the scope of a parent’s immediate control constitutes the offense of enticing a child the consequences would be alarming. For example, the suggestion of a young man or woman to their high school prom date that instead of their going directly home they go elsewhere would constitute an offense. Obviously, such conduct is not what this penal code provision is intended to forbid.”
Cunyus, supra, 727 S.W.2d at 564-65.
A case even more on point is Sanchez v. State, 712 S.W.2d 170 (Tex.App.1986). In that case, the appellant was convicted of the same offense as the appellant in Cunyus, supra. In the Sanchez case, the 16-year-old victim left school on May 17, 1985, and went to the appellant’s house, where she suggested to him that they “go somewhere.” The two drove in the appellant’s car to a motel and had sexual intercourse. The next morning, the appellant dropped the victim off near her aunt’s house. The victim testified that she had known the appellant for approximately a year, that she liked him, and that she had been with him on a previous occasion. Sanchez, supra, 712 S.W.2d at 171.
Both the victim and her parents testified that she did not have her parents’ permission to be with the appellant. In fact, her parents had made it clear to the victim that they did not want her to have any contact with the appellant. The victim stated that she had decided on her own to go see the appellant on the day in question and that the appellant had nothing to do with her decision. Id.
In reversing the appellant’s conviction, the Texas Court of Appeals held:
“[T]he State offered no evidence ... of any conduct on appellant’s part, from which it can be inferred that appellant ‘enticed’ or ‘persuaded’ Sanchez to come to his house. Even if the evidence before us is sufficient to establish that appellant knowingly ‘took’ Sanchez from her parents’ custody, the record contains no evidence of an intent on appellant’s part to interfere with the parents’ lawful custody. We conclude that the trial court abused its discretion in finding that appellant violated the terms of § 25.04.”
Sanchez, supra, 712 S.W.2d at 172.
The same conclusions are necessary in this case. Viewing the evidence in a light most favorable to the state, Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), affirmed, 471 So.2d 493 (Ala.1985), we find that the appellant’s actions in no way interfered with the victim’s parents’ lawful custody of her. The appellant and the victim had, by that time, been seeing each other for approximately six months. They spent two nights together, at the victim’s suggestion. This evidence was insufficient to prove a violation of the statute.
For the reasons stated above, the law requires that the appellant’s conviction be reversed and a judgment rendered in his favor.
REVERSED AND RENDERED.
All the Judges concur except BOWEN, J., who concurs in result with opinion.