**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gregory MICKLUS, Defendant-Appellant.**

No. 77–1644.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1978.

Decided July 13, 1978.

Jona Goldschmidt, Carbondale, Ill., for defendant-appellant.

Timothy J. Gifford, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, WOOD, Circuit Judge, and REYNOLDS, Chief District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The defendant-appellant, Gregory Micklus, was convicted in a jury trial of attempting to escape from the Marion Federal Penitentiary on July 22, 1976, in violation of 18 U.S.C. §§ 2 and 751(a). On appeal the defendant asserts that the trial court committed reversible error in a number of respects:

1) The defendant was deprived of the effective assistance of counsel when his trial attorney failed to request,

---

* The Honorable John W. Reynolds, Chief United States District Judge for the Eastern District of Wisconsin, is sitting by designation.

and the judge failed to give, an instruction on the defense of "necessity" as well as the defense of "duress."

2) The court improperly denied the defendant's request that a subpoena be issued at government expense to a psychologist formerly employed at Marion who had examined the defendant at various times prior to the escape attempt.

3) The trial judge unreasonably restricted defendant's trial counsel's examination of certain witnesses.

4) The defendant was deprived of a fair trial by prejudicial comments by the prosecutor in cross-examination and in closing argument.

We affirm.

Taken in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the facts of the escape attempt were as follows. On July 22, 1976, around 1 p. m., Micklus and a fellow inmate named William Newman left a nonrestricted recreation area in the Marion Prison and by crawling over a corridor connecting two cell blocks dropped into a restricted area. After removing some clothing, the two inmates began to run toward the south perimeter fences. They were seen by a guard in tower number six who told them to halt. Instead, they began to climb the fence. They failed to respond to a warning shot, but stopped after being fired on. The inmates had prepared for the escape on the morning of the 22nd. Each wrapped his knees in Ace bandages and wore padded handball gloves in order to scale the barbed wire fence. Micklus also wore long underwear and had concealed a dime in an envelope along with numerous names and addresses.

The above facts were not contested by the defendant at trial. Instead, he pursued a two-pronged defense on the theory that his actions were the result of inexorable external pressures. Firstly, he argued that his initial decision to escape was motivated by fear of a homosexual assault by an inmate named Beckley, now deceased. Secondly, he argued that at the last minute he decided to withdraw from the escape attempt but was coerced into continuing by Newman, who put a knife to his throat and threatened to kill him if he didn't come along. Most of the defendant's assertions of error relate to constraints on his ability to develop the first of these two theories at trial.

## I.

In his opening and closing statements and by the questioning of witnesses, the defendant's trial counsel developed his theory that Micklus was "coerced" into attempting to escape by the fear of sexual attack, and at the last minute, by Newman's threats. In the opening and closing statements he argued that this element of coercion or compulsion negated the existence of the requisite *mens rea* for the crime charged, i. e., voluntariness or wilfulness. A jury instruction on the theory of "coercion or duress" was demanded and granted.[1] Defendant's counsel on appeal now argues that the facts called for the development of the defense theory of "necessity" as well as "coercion," particularly with regard to the fear of sexual assault. It is further asserted that the failure of defendant's trial attorney to develop such a defense and to seek an appropriate jury instruction denied defendant of

1. The instruction given to the jury was as follows:

"Coercion or compulsion may provide a legal excuse for the crime charged in this indictment. In order, however, to provide a legal excuse for any criminal conduct, the compulsion must be present and immediate and of such a nature as to induce a well-founded fear of impending death or serious bodily injury. And there must be no reasonable opportunity to escape the compulsion without committing the crime or participating in the commission of the crime. Acts done under such coercion or compulsion are not done willfully. If the evidence in the case, leaves you with a reasonable doubt that the defendant at the time and place of the offense alleged in the indictment, acted willfully and voluntarily and as a result of coercion, compulsion, or duress, as just explained, then it is your duty to find the defendant not guilty." (tr. 128.)

the effective assistance of counsel and that the judge's resulting failure to give such an instruction was plain error. We cannot agree.

■ The defendant has not been able to cite any cases in a federal jurisdiction in which "necessity" has been permitted as a theory of defense in an escape prosecution. However, defendant has pointed to developing case law in certain other jurisdictions concerning the differences between the concepts of "necessity" and "duress" as applied in this area. See, e. g., People v. Unger, 66 Ill.2d 333, 5 Ill.Dec. 848, 362 N.E.2d 319 (1977); Gardiner, The Defense of Necessity and the Right to Escape from Prison—A Step Towards Incarceration Free From Sexual Assault, 49 S.Cal.L.Rev. 110 (1975); LaFave and Scott, Handbook on Criminal Law 374–88 (1972). It has been suggested that on a theoretical plane, the major difference between "duress" and "necessity" is that the former negates the existence of the requisite mens rea for the crime in question, whereas under the latter theory there is no actus reus. See Gardiner, supra, at 115–23. Under the necessity approach, the defendant is faced with committing the act which normally constitutes a crime or an alternative act which represents a greater evil. In such a situation, he is encouraged to choose the lesser evil. The theory is not that his free will was overcome by an outside force as with duress, but rather that it was properly exercised to achieve the greater good.[2] Traditionally, in order for the necessity defense to be applicable, the choice of evils dilemma must have been staged by the physical forces of nature rather than by other human beings. See LaFave and Scott, supra, at 381–83. The use of a fear of homosexual assault to justify a prison escape does not fit easily into either the "duress" or "necessity" mold. However, in the case at bar we need not decide whether it would constitute error for a trial judge to refuse to give a necessity instruction if requested, since none was requested here. We deal only with the more limited questions of whether the defendant's trial counsel's failure to attempt to develop the necessity approach in addition to a coercion defense deprived the defendant of the effective assistance of counsel or whether the trial judge's failure to give a necessity instruction sua sponte constituted plain error.

■ We do not believe that the defendant was deprived of the effective assistance of counsel in this case. Since federal law has not recognized "necessity" as a defense in prison escape cases, to hold otherwise would mean that a defendant would have been deprived of the effective assistance of counsel merely because his attorney failed to attempt to pioneer new law in the jurisdiction and where the change in question had been accepted in only a handful of other jurisdictions. Here, defendant's trial counsel was able to extensively develop the facts concerning the sexual pressures exerted on the defendant. He also requested and was granted a "coercion" instruction. Even under a necessity theory the defendant would have had to show that there was no other way of avoiding the sexual assault short of escape from prison. We conclude that the trial counsel's failure to develop the necessity theory does not mean that the legal assistance provided the defendant fell below the constitutionally required minimum standard of professional representation. United States ex rel. Williams v. Twomey, 510 F.2d 634, 640 (7th Cir. 1975).

■ For related reasons we cannot characterize as "plain error" the trial judge's failure to give the jury an instruction that was never requested and which has never been recognized by federal law as being appropriate in prison escape prosecutions.

## II.

The defendant's next contention is that the trial court committed prejudicial error by denying defendant's request to subpoena a witness at government expense pursuant to Rule 17(b) of the Federal Rules of Crimi-

---

**2.** The defendant would still have to show that there was no other way of escaping the as-

saults that would be even less harmful than the route chosen.

nal Procedure. That rule requires that a subpoena issue "upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense." The burden of making the showing in the first instance is on the defendant. In the present case, the defendant sought the attendance at trial of a prison psychologist currently employed in Wisconsin who had interviewed the defendant in the prison at Marion, Illinois sometime before his escape attempt. The defendant's request stated that:

It is part of the defense of coercion or compulsion (duress) that any compulsion or duress placed on the defendant be among other things, of such a nature as to induce a well-founded fear of impending death or serious bodily injury. Dr. Carr can testify as to the foundations of defendant Micklus' fears, and also as an expert witness with regard to prison life at Marion . . . . This testimony . . . would tend to show the reasonableness of the compulsion and the fear which the defendant intends to testify about.

The trial court denied Micklus' request on the grounds that Dr. Carr's testimony would be too remote and cumulative of other witnesses.

The trial judge is granted wide discretion in deciding whether a subpoena should issue, *United States v. Greene*, 497 F.2d 1068, 1078 (7th Cir. 1974), and we cannot say that the denial in the case at bar constituted an abuse of that discretion. With respect to Dr. Carr's proposed testimony concerning prison life, the trial judge not unreasonably concluded that the evidence would be cumulative, in view of the fact that he had already granted writs of habeas corpus *ad testificandum* for five inmates to testify on that subject. Nor can we say that the trial judge was unreasonable in concluding that that part of Dr. Carr's testimony which might "tend to also show the reasonableness" of Micklus' fears would be of limited relevancy. The only defense theory brought to the judge's attention was the theory of duress. However,

since the defense of duress requires that there be a present and immediate threat of death or severe bodily injury, *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976), and since there was no indication that Dr. Carr would have been able to show that Micklus' fear of an immediate sexual attack at the moment of escape was well-founded or to corroborate the testimony concerning Newman's alleged death threats, the trial judge was within his discretion in concluding that the defendant had not shown that Dr. Carr's testimony was "necessary to an adequate defense." In this regard the judge was also justified in considering the expense of bringing Dr. Carr in from Wisconsin and the fact that he had already granted Micklus' motion to obtain the services of a psychiatrist pursuant to 18 U.S.C. § 3006A(e).

### III.

The defendant's third argument is that he was deprived of due process by the court's restrictions of his counsel's examination of certain witnesses. In his direct examination of Newman, Micklus' trial counsel tried to establish the futility of trying to avoid sexual pressure by any means short of escape. In this area, Newman testified about the uselessness of asking to be put in segregation or to be transferred to another prison. On cross-examination, the government asked Newman why Micklus couldn't have reported the sexual pressure to his caseworker, to which Newman responded that it would have branded Micklus as a stool pigeon and that stool pigeons don't last long in prison. On redirect, Micklus' attorney again asked Newman why Micklus couldn't have taken his complaints through official channels, to which Newman again replied that he would have been branded as a stool pigeon and that stool pigeons can be "gotten to" anywhere in the penitentiary. Defense counsel next tried to find out who would carry out these threats, at which point the court sustained an objection by the government. Micklus' attorney then attempted to return to the uselessness of using prison complaint procedures. After

the following exchange took place between the judge and defense counsel, the court again sustained the government's objection.

> Defense Counsel: Well, your honor . . . [the prosecutor] asked questions about the procedures which the witness answered on cross, and I'm inquiring into that.
>
> The Court: Well, you went into it on direct, too, about the possibility of him going into segregation, so it's really not an issue, is it? It's been gone into by both of you.
>
> Defense Counsel: That's correct.

■ The trial judge has broad discretion in assessing the relevancy or materiality of evidence. *United States v. Bolin*, 514 F.2d 554, 558 (7th Cir. 1975). Here we find no abuse of that discretion. There was little relevance in determining who might be the executioner of a stool pigeon, and there was little prejudice, if any, to the defendant's case in not being allowed to develop this topic in greater detail. Similarly, at the point that defendant's counsel asked the question about complaint procedures, the futility of using such procedures had already been emphasized by the witness on both direct and cross-examination. There was therefore little prejudice in preventing the defense from eliciting further evidence which was likely to be cumulative. Moreover, defendant's counsel appears to have waived any objection to the court's ruling by agreeing with the judge's assessment of the situation.

■ The second instance of a restriction of the defense counsel's examination of a witness occurred after an inmate named Mathews testified that he had raped Micklus at knife-point. When defense counsel sought to ask the witness where he got the knife and how he was able to do this act in prison, the court sustained the government's objection that the question was immaterial. We agree that the source of the knife was immaterial. Also, in view of the fact that the witness was otherwise permitted to develop his story of the alleged rape, we cannot conclude that the judge's ruling affected a substantial right of the defendant as is required by Fed.R.Evid. 103(a) in order to justify reversal.

## IV.

■ The defendant's last contention is that he was denied due process by prejudicial comments by the prosecutor during the questioning of witnesses and in closing argument. However, in one of the instances cited by the defendant, the judge sustained the defense's objection to the prosecutor's question at issue and in the remaining instances there was no defense objection at all. Although there are limits on how far a prosecutor may go in his comments about the defendant's theories or witnesses, *see, e. g., Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Spain*, 536 F.2d 170 (7th Cir. 1976), having reviewed the record as a whole we find no misconduct on the part of the prosecutor in the present case which can be said to constitute plain error.[3]

---

3. The instances cited by the defendant are as follows:

   a) At the end of his cross-examination of Newman, the prosecutor stated:

   > Isn't it true, Mr. Newman, that you decided to take the rap so to speak, and you're just doing Mr. Micklus a friend [sic] in trying to corroborate the story that he's dreamed up about why he was trying to escape, or what caused him to escape? I suggest to you, sir, that that is, in fact, the truth and not this concoction you've come in here with today. . . .

   No objection was raised by the defense.

   b) In his cross-examination of Mathews the prosecutor tried to bring out the fact that the latter would be in prison for life and that he had nothing to lose by lying. The following question was asked:

   > I'm asking you. It wouldn't bother you any, to come in here and lie from the time you started to the time you stopped, would it?

   The court sustained a defense objection, stating that the question was argumentative.

   c) Lastly, in closing argument, the prosecutor made the following comments:

   > The government argues that these witnesses were lying; that they didn't have any reason to do anything other than lie.
   > ". . . coercion garbage. . . ."
   > Believe you me, any prisoner would want to serve federal time before he'd serve state time. Mathews would come in and

The judgment of the district court is AFFIRMED.

say anything all day long. The other witnesses were no better.
[The defendant] comes in here and brings these prisoners in and tries to concoct the story that you've heard told to you today.

There was no objection or motion to strike by the defense.