This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                        **NO. 31,219**

**GEORGE JAURE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Thomas A. Rutledge, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

{1}     Defendant George Jaure appeals the jury's verdict finding him guilty of aggravated battery (deadly weapon).  We affirm.

**BACKGROUND**

{2}     Because the parties are familiar with the events in dispute, we review just the basic facts before proceeding to our discussion.  Defendant was charged with aggravated battery (deadly weapon) and aggravated assault (deadly weapon) relating to an altercation that occurred on August 16, 2009.  In the early morning hours of that day, Defendant, his brother Patrick Jaure, and a woman named Nina were at the home of Janelle Villareal.  Marissa Lopez, who lived across the street with her brother, Hector Lopez (Lopez), and her mother, Elizabeth Lopez, was also there.  While the group was sitting outside on Villareal's front steps, Lopez and his friends, Jose Rocha and Oliver Santana, pulled into the driveway of the Lopez home.

{3}     As Santana was pulling his truck out of the driveway, Defendant approached the vehicle and asked if they had any cigarettes.  Lopez, Rocha, and Santana said, "no," that they did not smoke.  Words were exchanged.  Defendant then reached into the truck and punched Lopez.  As Defendant was pulling his arm away, Lopez saw a knife in Defendant's hand.  Lopez noticed that his lip was split and bleeding.

2

**{4}** Elizabeth Lopez heard the commotion and came out of her house. She saw Defendant holding a beer in one hand while waving a knife with the other. She said she was calling the police. Defendant and his brother then returned to Villareal's house where they stayed until the police arrived.

**{5}** Carlsbad Police Officer Jeremy Bolduc responded to the scene and questioned Lopez, Santana, Rocha, and a younger female. Lopez, Santana, and Rocha then left for the hospital where Santana and Rocha each prepared sworn written statements on a Carlsbad police form. At trial, both Santana and Rocha testified that they did not remember the events of August 16, 2009. Further, they both stated that, for the most part, they did not remember the information contained in their voluntary written statements or the substance of the testimony they gave at the preliminary hearing.

**{6}** At the close of the State's case, the defense moved for a directed verdict, which the district court denied. The defense rested and did not call any witnesses. Following deliberations, the jury returned a verdict of guilty of aggravated battery with a deadly weapon. Defendant was sentenced to a term of three years for the aggravated battery, and his sentence was enhanced by four years pursuant to the habitual offender statute, NMSA 1978, § 31-18-17(B) (2003). This appeal followed.

**DISCUSSION**

**{7}** Defendant raises a myriad of issues and essentially makes eight arguments on appeal. The first five can be summarized as matters involving the testimony of Oliver

3

Santana and Jose Rocha. Defendant argues that: (1) the district court abused its discretion by allowing the prosecutor to ask Santana and Rocha argumentative and leading questions; (2) the district court committed plain error by allowing improper questioning of Santana and Rocha; (3) the district court abused its discretion by allowing Officer Bolduc to testify about statements made by Santana and Rocha identifying Defendant as involved in the incident; (4) the district court committed plain error when it admonished Rocha and determined that he would be treated as a hostile witness; and (5) the combined effect of the improper rulings in 1-4, above, deprived Defendant of a fair trial and of his right to confront his accusers. In addition, Defendant contends that his confrontation rights were violated, there was insufficient evidence to sustain his conviction, and the district court abused its discretion in refusing to grant him a mistrial. We begin with the evidentiary issues and then turn to Defendant's remaining arguments.

**The Evidentiary Issues**

{8}     As we have noted, Defendant raises several issues concerning the State's questioning of Santana and Rocha, the district court's questioning and "admonishment" of Rocha, and Officer Bolduc's testimony regarding statements made by Santana and Rocha identifying Defendant as being involved in the incident. To the extent that the district court overruled defense counsel's timely objections to the State's questions, we review those evidentiary rulings under an abuse of discretion

4

standard. *See State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526, *overruled on other grounds by State v. Swick*, 2012-NMSC-018, 279 P.3d 747. For those questions where defense counsel did not object, the issues are reviewed for plain or fundamental error. *State v. Abril*, 2003-NMCA-111, ¶ 12, 134 N.M. 326, 76 P.3d 644, *overruled on other grounds by State v. Torres*, 2012-NMCA-026, 272 P.3d 689. The plain error doctrine applies only to evidentiary matters. *See* Rule 11-103(D) NMRA; *State v. Lucero*, 116 N.M. 450, 453-54, 863 P.2d 1071, 1074-75 (1993). Under a plain error analysis, we must have "grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *State v. Gutierrez*, 2003-NMCA-077, ¶ 19, 133 N.M. 797, 70 P.3d 787. Further, we will conclude that fundamental error has occurred "only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992). Finally, we review the cumulative impact of the preserved and unpreserved errors for fundamental error. *State v. Wilson*, 109 N.M. 541, 547, 787 P.2d 821, 827 (1990).

**1.      Oliver Santana**

{9}      There is no dispute that neither Santana nor Rocha were able to remember much about the events of August 16, 2009. Santana remembered being with Lopez and Rocha in his truck, being hit in the face by someone, and retaliating. However, he

could not remember what precipitated the fight, who struck him, or what he had done in retaliation. Santana testified that he did not remember seeing Defendant on the night of the incident, and he was unable to identify Defendant at trial.

{10} On direct examination, Santana admitted to writing and signing a statement that he gave to the police about what happened on August 16, 2009. Although Santana acknowledged his signature and identified the writing as his, he said he could not really remember anything about the events in the statement. The prosecutor questioned Santana about his memory and asked if he had written down what had happened accurately in the statement he gave to police. Santana responded that he could not tell if what he wrote was accurate because it was too long ago. Throughout his testimony, Santana continued to insist that he did not remember anything that he wrote in the statement.

{11} Defendant argues that the questions the prosecutor asked of Santana were impermissibly leading and argumentative. We are not persuaded. As an initial matter, we note that Defendant cites to only one leading question to Santana, and he provides no analysis as to why the district court abused its discretion. Specifically, after Santana said that reading the statement did not help him remember the events of August 16, the prosecutor asked Santana if he had a learning disability. Santana answered that he might have dyslexia, and the following exchange then took place,

6

which ended with defense counsel objecting on the basis that the questions were leading:

> Prosecutor: When you read that statement, does it make sense to you? Does it flow logically? Are you, like, telling a story?
>
> Santana: Um, no, not really.
>
> Prosecutor: Not really. You don't start out with you saying what happened on a specific date, at a specific time?

{12} A discussion of abuse of discretion for allowing the prosecutor's questions above to Santana is needless. Defendant does not point to how either of these questions suggested answers to Santana, much less how the district court's ruling was erroneous. We therefore do not consider it further.

{13} Defendant also does not explain how the district court's failure to sustain objections to some arguably argumentative questions was an abuse of discretion. Defendant points to the four instances in which defense counsel objected to the prosecutor's questions or statements as argumentative. The first three were objections to: (1) the prosecutor's questions regarding Santana's memory, (2) the prosecutor's question asking Santana if he had written down why Lopez had a bloody lip, and (3) the prosecutor's question regarding how long after the incident Santana had written the report and how long after the incident he had gone to the hospital. We fail to see—and Defendant provides no explanation—how the district court acted beyond the bounds of reason by allowing the questions and statements.

7

**{14}** Defendant also contends that the district court abused its discretion when it allowed the prosecutor to ask Santana whether he made it a habit to lie to police. The district court overruled defense counsel's objection that the question was argumentative. Defendant's reliance on *United States v. Micklus*, 581 F.2d 612, 617 n.3 (7th Cir. 1978), is both curious and unavailing. In that case, the defendant claimed that he was denied due process by prejudicial comments made by the prosecutor. *Id.* at 617. The Seventh Circuit listed several comments and questions by the prosecutor that essentially accused the witnesses of lying; however, the court found no misconduct warranting reversal of the defendant's conviction. *Id.* We, too, find no misconduct here. In any event, it is entirely possible that the prosecutor in this case was not accusing Santana of lying, but was merely asking him if he ever lied to police to determine whether the statements he made on the police form were likely truthful. The district court did not abuse its discretion, and there was no plain or fundamental error with regard to the prosecutor's questioning of Santana.

**2.  Jose Rocha**

**{15}** Jose Rocha also testified that he had no memory of the events of August 16, 2009, and that he could not recall writing the statement or what he wrote. In fact, Rocha testified that he did not even recognize Defendant. When asked why he would put the name of someone he did not know on his statement, Rocha replied, "I don't know." Rocha persisted in testifying that he did not remember anything and that he

8

did not know who Patrick Jaure was, that he did not remember talking to the police on August 16, and that he did not remember who gave him the police department form, although he did say that there were male and female officers involved. When he said he did not know who gave him the form, the prosecutor asked the district court to direct Rocha to answer. The court reminded Rocha that he was under oath to tell the truth and directed him to answer the questions. Rocha then stated that he spoke to male and female officers at the hospital and that Lopez and Santana were at the hospital. But he then immediately had a lapse of memory again. When asked, Rocha could not remember why he was at the hospital, who had driven to the hospital, or whether Santana had a truck. At that point, the district court declared Rocha a hostile witness, and the prosecutor was permitted to ask leading questions.

{16} The prosecutor proceeded to ask Rocha a series of leading questions, including whether Rocha, Lopez, and Santana were backing out of Lopez's driveway when Defendant approached and asked for a cigarette; whether he wrote down that he told Defendant he did not smoke; whether he wrote that Nina accused Lopez of stealing her cigarettes; whether he wrote that Defendant got mad and struck Lopez in the mouth with a knife; whether he wrote that Patrick Jaure punched Lopez also; and whether he wrote that Patrick Jaure then hit Santana. To each question, Rocha testified that he did not remember.

{17}     As a preliminary matter, although Defendant contends that Rocha "was asked some leading questions prior to the court's declaration [that he was a hostile witness]," he does not point to what those questions were nor does he discuss how allowing them constituted an abuse of discretion or amounted to plain or fundamental error. To the extent that Defendant argues that the district court erroneously allowed the prosecutor to ask Rocha leading questions after Rocha was declared a hostile witness, we disagree. First, we observe that defense counsel did not object to the questions because they were leading, but rather on the ground that no adequate foundation had been laid for them. Defendant makes no argument as to that objection on appeal. Further, we are not persuaded by Defendant's argument that the prosecutor improperly used leading questions because Rocha "was not acting as a 'hostile' or 'adverse' witness." We note that the credibility of a witness may be attacked by any party, including the party calling the witness. Rule 11-607 NMRA. Prior inconsistent statements may be used to impeach the credibility of a witness. Rule 11-613 NMRA. Additionally, Rule 11-611(C) NMRA of the Rules of Evidence reads:

> Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions
>
> (1)     on cross-examination, and
> (2)     when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

10

We conclude that where, as here, a witness deliberately seeks to avoid testifying by claiming loss of memory in response to specific questions, the district court's declaration of Rocha as a hostile witness, and the resulting use of leading questions, was not clearly untenable or clearly against reason and our rules of evidence.

**{18}** Defendant's reliance on *State v. Orona*, 92 N.M. 450, 454, 589 P.2d 1041, 1045 (1979), is misplaced. In *Orona*, our Supreme Court concluded that, under Rule 11-611(C), "[d]eveloping testimony by the use of leading questions must be distinguished from substituting the words of the prosecutor for the testimony of the witness." *Orona*, 92 N.M. at 454, 589 P.2d at 1045. The Court determined that, in that case, the district court "abused its discretion in such a manner as to violate principles of fundamental fairness" after it permitted every word describing the alleged offense to come from the prosecuting attorney, rather than from the witness. *Id.* There, the witness was allowed to read her statement, and the prosecutor, without asking if her memory had been refreshed, proceeded to lead the witness as to the contents of the statement. *Id.* Over defendant's objection, the district court allowed the "direct examination [to be] continued with the prosecutor graphically describing sexual acts of [the] defendant by way of leading questions, to each of which the witness gave a simple answer of 'yes.' " *Id.* This case is factually distinguishable from *Orona*.

**{19}** Unlike *Orona*, the prosecutor here showed Rocha his statement and asked several times if it refreshed his memory. Rocha repeatedly claimed he did not

11

remember anything, including that he wrote the statement. In addition, he testified that he did not recognize Defendant, even though he had written Defendant's nickname, "Chucky," on the police form; that he did not know Patrick Jaure, even though he had written his name down as well; that he did not remember talking to the police on August 16; that he did not remember why he been at the hospital; and that he did not remember if Santana had a truck. Our review of Rocha's testimony establishes that his selective loss of memory was inherently incredible and amounted to an implied denial of the facts contained in his statement. On that basis, Rocha's prior statements were properly admitted through the use of leading questions, as prior inconsistent statements. Accordingly, we conclude that the prosecutor's leading questions did not constitute fundamental error.

{20} As with the questions directed to Santana, Defendant also argues that "[b]eyond being leading, however, the questions [to Rocha] were unnecessarily argumentative and repetitive." Defendant refers us to only one question—asking Rocha, "Is there anything that you do know?" Again, Defendant does not explain how the district court's failure to sustain the objection to this question was an abuse of discretion. "We will not review unclear arguments, or guess at what [a party's] arguments might be." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. We conclude that the district court did not abuse its discretion, and there

12

was no plain or fundamental error with regard to the prosecutor's questioning of Rocha.

**3.     The District Court's Questions, Admonishment, and Statement to Rocha**

{21}     As we have noted above, during the course of his testimony, Rocha repeatedly said that he did not remember anything about the events of August 16, 2009, including who Defendant was.   Although Rocha finally said that he was given the Carlsbad Police Department form by a male and a female, he did not remember who they were. The prosecutor asked how Rocha knew "if they're male and female," and Rocha again said he did not know.  The prosecutor asked the court to direct Rocha to answer, and the district court said, "Mr. Rocha, you're under oath to tell the truth so answer the questions."

{22}     Rocha then continued to answer the prosecutor's questions by saying that he could not recall or remember anything.  After a bench conference, the district court declared Rocha to be a hostile witness and said, "Counsel, the court is going to find that Mr. Rocha is a hostile witness and you may proceed accordingly."  At the end of his testimony and after the prosecutor and defense had asked their questions, the district court asked Rocha if he knew Patrick Jaure.  Rocha said he did not, and the district court then asked, "Then how do you know that you've had no contact with him?"

13

**{23}** It is these three issues—the district court's admonishment to Rocha that he was under oath to tell that truth, the determination that Rocha was a hostile witness, and the two questions posed to Rocha by the court—that Defendant contends amount to plain or fundamental error and deprived him of a fair trial. We are not persuaded, and Defendant has failed to show how these isolated instances leave us with "grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Gutierrez*, 2003-NMCA-077, ¶ 19.

**{24}** Further, Defendant's reliance on *State v. Paiz*, 1999-NMCA-104, 127 N.M. 776, 987 P.2d 1163, is unavailing. In *Paiz*, this Court noted that under Rule 11-611(A), a trial judge may question witnesses to clarify testimony or bring out all of the facts. *Paiz*, 1999-NMCA-104, ¶ 17. However, a district court's comments and questions implicate a defendant's right to fair trial and, thus, may rise to the level of plain or fundamental error. *Id.* We concluded that the trial judge in that case abused her discretion because she had extensively questioned a witness, made remarks that were improper, improperly limited defense counsel's cross-examination, and made impermissible comments on the evidence. *Id.* ¶¶ 19-20. Defendant here concedes that a single question or comment is unlikely to rise to a level that exceeds a judge's discretion under Rule 11-611(A). He nevertheless challenges the district court's declaration of Rocha as a hostile witness and the court's two questions asking whether Rocha knew who Patrick Jaure was. We disagree. The district court's two questions

14

here were clearly not extensive or persistent, nor were they calculated to give the impression that the judge favored one side over the other, as was the case in *Paiz*. We further conclude that even coupling the two questions with the judge's declaration at another point in the testimony that Rocha was a hostile witness does not run afoul of Rule 11-614 NMRA.

{25} Likewise, Defendant's citation to *State v. Sanchez*, 112 N.M. 59, 811 P.2d 92 (Ct. App. 1991), is similarly misplaced. In *Sanchez*, we held that the trial judge's statement in front of the jury that the witness was "unavailable" and "because of purported lack of memory, [his testimony was] worthless," was a prejudicial comment on the evidence. *Id.* at 61, 811 P.2d at 94. In contrast, under the facts before us, we cannot say that the district court's questions or statements in this case amounted to a comment concerning the weight of the evidence or the credibility of the witness. Accordingly, the court's comments do not rise to the level of plain or fundamental error.

**4.     Officer Bolduc's Testimony**

{26} Defendant contends that the district court abused its discretion by permitting Officer Bolduc to testify as to statements made by Santana and Rocha on the night of the incident. Officer Bolduc was the State's final witness. He identified the statements that he had taken from Santana and Rocha and testified that he had spoken

15

with them at the hospital. The following exchange, which is the basis of Defendant's argument here, then took place:

> Prosecutor: Did either of them, while you were out at the scene, did either of them identify any other person that might have been involved in this incident to you?
>
> Officer Bolduc: Yes.

At this point, defense counsel's objected and said that he was "concerned . . . that this is just a way of putting into sworn testimony form, through the officer who did not make the statement, something that was stated by these individuals." As an initial matter, we note that Officer Bolduc only testified as to statements of identification. In particular, he testified that Santana, Rocha, and Lopez all identified both Patrick Jaure and Defendant as being involved. It is well established that out-of-court statements of identification are non-hearsay under Rule 11-801(D)(1)(c) NMRA. Furthermore, the jury had direct testimony from two eyewitnesses, Hector Lopez and Elizabeth Lopez, that support its finding that Defendant was involved in the incident on August 16, 2009. Accordingly, we conclude that the district court did not commit reversible error or abuse its discretion.

**5.      The Combined Effects of the Rulings**

{27}      Because we have concluded that the district court's rulings as to the testimony of Santana, Rocha, and Officer Bolduc were not in error, we necessarily conclude that, regardless of whether they are considered individually or cumulatively, there was no

16

abuse of discretion or plain or fundamental error with respect to the court's actions. Moreover, to the extent that some testimony was erroneously admitted, our Supreme Court has previously said that "not all erroneously admitted evidence necessitates reversal." *State v. Woodward*, 121 N.M. 1, 9, 908 P.2d 231, 239 (1995), *abrogated on other grounds as recognized by State v. Granillo-Macias*, 2008-NMCA-021, 143 N.M. 455, 176 P.3d 1187. The error must be prejudicial. *See id.* at 9-10, 908 P.2d at 239-40. "In the absence of prejudice, there is no reversible error." *State v. Hoxsie*, 101 N.M. 7, 10, 677 P.2d 620, 623 (1984), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 779 P.2d 99 (1989). In this case, Defendant has not established any prejudice requiring reversal.

{28} Finally, to the extent that Defendant argues that Santana and Rocha's "written statements to police on the night of the incident unquestionably constitute hearsay," we do not disagree. However, Defendant does not point to anywhere in the record—and we are unable to locate—where the written statements themselves were admitted into evidence. "Matters not of record present no issue for review." *State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296. We therefore do not address this argument.

**Confrontation Clause**

{29} In addition to the evidentiary issues, Defendant asserts that his confrontation rights were violated based on the State's discussion of the contents of Santana and

17

Rocha's written statements during the questioning of those two witnesses and Officer Bolduc. Specifically, Defendant contends that because Santana and Rocha could not remember anything, they were "unavailable" for purposes of the confrontation clause, and the substance of their statements should therefore not have been placed before the jury. We disagree that Santana and Rocha were "unavailable" and that Defendant's confrontation rights were violated.

{30} Defendant concedes that defense counsel did not object to the State's questioning of Santana and Rocha on confrontation grounds and that, therefore, his conviction will be reversed only if the error is fundamental. *See State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 (reviewing an unpreserved Confrontation Clause argument for fundamental error). Accordingly, Defendant must demonstrate that he is either indisputably innocent or that the error in permitting the questioning of Santana, Rocha, and Bolduc makes his conviction fundamentally unfair and a miscarriage of justice. *See State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (providing that fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused").

{31} The Confrontation Clause prohibits the admission of testimonial hearsay statements unless the declarant is unavailable and the defendant had a prior

18

opportunity to cross-examine the declarant. *State v. Ortega*, 2008-NMCA-001, ¶ 14, 143 N.M. 261, 175 P.3d 929, *overruled on other grounds by State v. Mendez*, 2010-NMSC-044, 148 N.M. 761, 242 P.3d 328. As discussed earlier in this opinion, Santana and Rocha were called as the State's witnesses and were subjected to direct examination. Although Rocha was ultimately declared a hostile witness, that simply allowed the prosecutor to ask leading questions. Thus, Defendant had the opportunity to cross-examine both witnesses. Officer Bolduc's in-court identification testimony was also subject to Defendant's fundamental right to cross-examination. Defendant does not argue that he was indisputably innocent and does not demonstrate that any alleged defects in the proceedings made his conviction fundamentally unfair. Accordingly, we conclude that there was no fundamental error in this case.

**Sufficiency of the Evidence**

{32} Defendant next argues that the State did not present sufficient evidence to establish that Defendant actually used a knife to cut Lopez. A sufficiency of the evidence review involves a two-step process. Initially, the evidence is viewed in the light most favorable to the verdict. Then the appellate court must make a legal determination of "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted). Under this

deferential standard of review, we conclude there was sufficient credible evidence to sustain Defendant's conviction for aggravated battery with a deadly weapon.

{33}     In order to establish that Defendant was guilty of aggravated battery with a deadly weapon, the State had to prove the following elements:

    1.     [D]efendant touched or applied force to . . . Lopez by cutting him with a deadly weapon. [D]efendant used a knife.  A knife is a deadly weapon only if you find that a knife, when used as a weapon, could cause death or great bodily harm;
    2.     [D]efendant intended to injure . . . Lopez;
    3.     [D]efendant's act was unlawful;
    4.     This happened in New Mexico on or about the 16th day of August, 2009.

The State presented the following evidence that justified a finding that each element of the crime charged had been established beyond a reasonable doubt.

{34}     Lopez testified that Defendant reached into the truck and punched him.  As Defendant was pulling his arm away, Lopez saw a knife in Defendant's hand.  Lopez noticed that his lip was split and bleeding.  In addition, Elizabeth Lopez testified that she heard the commotion and came out of her house.  She opened the door and saw Defendant holding a beer in one hand while waving a knife around with the other.

{35}     Defendant's argument is premised on the fact that there was no evidence  to establish that Defendant *actually* used a knife to cut Lopez and that Lopez could not definitively say his injury was caused by a knife.  Although no direct testimony was presented that Defendant cut Lopez's lip with the knife, we hold that  the above-

described testimony constitutes sufficient circumstantial evidence that Defendant cut Lopez's lip with the knife. *See State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 ("The test for sufficiency of the evidence is whether substantial evidence of either a direct or *circumstantial* nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." (emphasis added) (internal quotation marks and citation omitted)). Accordingly, the evidence presented by the State was substantial enough to convince a reasonable juror that Defendant "touched or applied force to . . . Lopez by cutting him with a deadly weapon."

**Motion for Mistrial**

{36}    Lastly, we address Defendant's motion for a mistrial. A district court's ruling on a motion for a mistrial rests within the sound discretion of the court and will not be disturbed absent a showing of abuse of discretion. *See    State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516; *State v. McDonald*, 1998-NMSC-034, ¶ 26, 126 N.M. 44, 966 P.2d 752. An abuse of discretion occurs "when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Sutphin*, 107 N.M. 126, 130, 753 P.2d 1314, 1318 (1988).

{37}    Pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 983 (1967), and *State v. Boyer*, 103 N.M. 655, 658-60, 712 P.2d 1,4-6 (Ct. App. 1985), Defendant argues that the district court erred in denying his motion for mistrial based on defense

21

counsel's inability to play a recording of Lopez's preliminary hearing testimony. We note that Defendant does not cite to the record where this issue was preserved, and we will not search the record to do so. *See State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829 (stating that the court will not search the record to find whether an issue was preserved where the defendant did not refer the court to appropriate transcript references).

{38}	Further, although not raised by Defendant, we are not persuaded that there is any basis for reversal based on fundamental error. As we have noted, fundamental error "only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. Such is not the case here. Defendant concedes—and our review of the record establishes—that defense counsel was able to impeach Lopez through cross-examination. Although the impeachment may not have been as effective as the tape recording, we cannot say that it would "shock the judicial conscience to allow the conviction to stand" in this case.

**CONCLUSION**

{39}	For the reasons set forth above, Defendant's conviction is affirmed.

{40}	**IT IS SO ORDERED.**

_____

22

                          **LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**J. MILES HANISEE, Judge**